Earl W. SUTTON and Lavon R. Sutton, Appellees,

v.

John JONDAHL and John Jondahl, III, Appellants.

No. 46662.

Court of Appeals of Oklahoma, Division 2.

Jan. 21, 1975.

Released for Publication by Order of Court of Appeals Feb. 27, 1975.

John W. Raley, Jr., Northcutt, North-cutt, Ellifrit, Raley & Gardner, Ponca City, for appellees.

Lana Jeanne Tyree, Benefield, Shelton & Johnson, Oklahoma City, for appellant John Jondahl.

BRIGHTMIRE, Judge.

Landlords' fire insurance carrier sued a tenant and his 10-year-old son (in the name of the property owners) to recover a $2,382.57 fire loss. A jury returned a verdict favoring the insurance company against only the father. From a judgment on the verdict the father appeals claiming it resulted from some fatal judicial mistakes—two instructional and one evidentiary. We agree and reverse for a new trial.

The pertinent background and operative facts include these. Once upon a time the elder Jondahl rented from the Suttons a home for his family in Ponca City, Oklahoma. For Christmas 1968 he gave an inexpensive chemistry set to his 10-year-old son—a co-defendant—who performed experiments for about a year without mishap.

Then, on January 11, 1970, the budding scientist took an electric popcorn popper to his bedroom and while using it to heat some chemicals a flame suddenly flared upward igniting nearby curtains causing damage to the house in the amount of $2,382.57.

Central Mutual Insurance Company which covered subject premises with fire insurance, paid the loss, and then, as subrogee, brought this suit against John Jondahl and his boy, alleging, in substance, that the father contributed to the cause of the fire by breaching a duty to prohibit his son from carrying on unsupervised chemical experiments in the bedroom.

Later, at the request of defendants, the court required Central to substitute itself for the Suttons since it paid the full loss and therefore the landlords were not real parties in interest.

■ Defendant first says the trial court committed an error of a fundamental nature by telling the jury in Instruction No. 9—". . . Unless the Defendants prove to your satisfaction that they, or either of them, was not negligent, you should find in favor of Plaintiffs in the sum of $2,382.-57." This instruction, he argues, cast upon defendants the burden of proving their innocence—an especially egregious error when considered in light of the fact the jury was never advised that plaintiff had the burden of proving negligence on the part of each defendant. We agree. No other instruction mentions anything about who has the burden of proof in the case. The first one—given at the beginning of the trial—informed the jurors in a general way about their duties and certain elementary features of the proceedings irrelevant to the problem here.

The second instruction—given along with ten others at the close of the evidence—stated simply: "This is a civil action prosecuted by Central Mutual Insurance Company against John Jondahl and John Jondahl III. The Plaintiff alleges that a fire which occurred at 1713 Cedar Lane, Ponca City, Oklahoma, on January 11, 1970, was the result of the negligence of the Defendants. More specifically the Plaintiff alleges that John, III, improperly conducted his chemistry experiment and that his father failed to exercise proper supervision. Plaintiff alleges that the negligence of both Defendants caused a fire resulting in damage in the amount of $2,382.-57. The Defendants have filed separate answers in which they deny negligence on their part."

Instruction No. 3 defined "ordinary care," suggested what "negligence imports," defined "actionable negligence" as consisting of three elements (duty, its breach, injury to the party suing "proxi-

mately" caused by the breach), repeated that negligence must be "the proximate cause of the injury and damage," and explained what proximate cause is.

The fourth charge discussed the meaning of the phrase "preponderance of the evidence."

Number five told the jury that if they found defendants "guilty of negligence, the fact that the owners of the property have been reimbursed by insurance for the resulting damages does not relieve the Defendants of their negligence." The impropriety of this instruction will become manifest later on.

The sixth instruction stated a separate standard of care for minors, while the seventh informed the jury that "a parent must exercise reasonable control and supervision over his minor child."

Charge number eight explained that the "original Plaintiffs," the Suttons, owned the property in question and that when the fire occurred it was occupied by the Jondahls who as tenants had a duty not to negligently injure the property.

The ninth instruction begins as a "finding" one and before it ends takes on the character of res ipsa loquitur. In substance it advised that if the fire damage was caused by things solely under the control of "either" defendant, and such fire damage would not have occurred but for negligence on the part of "either" defendant, then a "presumption of negligence on the part of [both] Defendants has been established. Unless the Defendants prove to your satisfaction that they, or either of them, was not negligent, you should find in favor of the Plaintiffs in the sum of $2,382.57."

The remaining three advise that the father alone can be found guilty, that the amount of damages is agreed to, and that it will take the concurrence of at least five jurors to return a verdict.

The assailed ninth instruction, we think, is fundamentally wrong and misleading in a way that even a consideration of instructions as a whole fails to cure. Its form

and substance has the effect of making a "presumption of negligence" under the doctrine of res ipsa loquitur—and a preliminarily conclusive one at that—in that without placing any burden on plaintiff of proving anything it told the jury that if they found two predicatorial facts then the law presumes defendants were negligent on the basis of which plaintiff "should" have a verdict "unless the Defendants prove to your satisfaction that they, *or either of them,* was not negligent." [1]

■ In the first place the law does not do the presuming or inferring in connection with subject rule of evidence. All it does is permit the jury to infer or presume negligence from the mere happening of the accident under certain circumstances. Lawton Coca-Cola Bottling Co. v. Shaughnessy, 202 Okl. 610, 216 P.2d 579 (1950). Except for unusual circumstances the jury has discretion as to whether or not to make the inference. A jury's rejection of the inference can be due either to a failure of plaintiff to convincingly prove the premises or to persuade the jury that negligence is more probably the cause of the damage than otherwise. Or the jury may decline to make the inference if defendants are found to have proved by a fair preponderance of the evidence that they were not negligent.

Worth mentioning is a discussion of an instructional defect similar to the one we have here in St. John's Hospital & School of Nursing v. Chapman, Okl., 434 P.2d 160 (1967). There, failure to confide inference-making rights in the jury was recognized but, unlike here, other instructions given were held sufficient to dispel the fallacious implication of prima facie conclusiveness of the permissive res ipsa loquitur inference.

■ We hold here the instructions improperly directed the jury to return a verdict for plaintiff unless it found defendants had borne the burden of proving themselves blameless or of presenting

proof otherwise sufficient to exonerate themselves from a legal presumption of negligence. Failure of the trial court on its own motion to properly instruct the jury with regard to the fundamental issues and applicable law involved in the case is ground for a new trial. McKee v. Neilson, Okl., 444 P.2d 194 (1968); City of Altus v. Martin, 185 Okl. 446, 94 P.2d 1 (1939). The foregoing fundamental error, we think, was prejudicial to defendant and therefore warrants a new trial.

■ Defendant's remaining propositions we dispose of because the case is being remanded for further proceedings. One is that a res ipsa loquitur instruction was inappropriate because plaintiffs alleged only specific allegations of negligence. The same contention was rejected and the controversial subject laid to rest not long ago in Creswell v. Temple Milling Co., Okl., 499 P.2d 421 (1972). Said the court: "The doctrine [of res ipsa loquitur] is a rule of evidence and not a rule of pleading. . . . [T]he allegation of specific acts of negligence only does not preclude reliance on the doctrine . . . .."

■ Defendant's other proposition is that the verdict is not supported by evidence and is contrary to law. The argument is that the evidence fails to establish negligence on the part of the defending father pitched as it was on a failure to properly perform his duty to supervise his son whom the jury found innocent of negligence. While evidence bearing on the breach of such duty was indeed scarce we cannot say there was an absence. What we do say, however, is that there is no evidence to establish Central Mutual Insurance Company has been actionably damaged by such breach. The reason is that under the circumstances thus far disclosed by the record here, the insurance company has no subrogational rights against the tenant of its policyholder.

■ The principle of subrogation was begotten of a union between equity and her

1. The jury, incidentally, failed to follow this instruction in that they did not find the younger Jondahl negligent, yet returned a verdict for plaintiff against the older defendant.

beloved—the natural justice of placing the burden of bearing a loss where it *ought to be*. Being so sired this child of justice is without the form of a rigid rule of law. On the contrary it is a fluid concept depending upon the particular facts and circumstances of a given case for its applicability. To some facts subrogation will adhere—to others it will not. Home Owners' Loan Corp. v. Parker, 181 Okl. 234, 73 P.2d 170 (1937).

■ Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance. This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest. Here the landlords (Suttons) purchased the fire insurance from Central Mutual Insurance Company to protect such interests in the property against loss from fire. This is not uncommon. And as a matter of sound business practice the premium paid had to be considered in establishing the rent rate on the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. And of course it follows then that the tenant actually paid the premium as part of the monthly rental.

The landlords of course could have held out for an agreement that the tenant would furnish fire insurance on the premises. But they did not. They elected to themselves purchase the coverage. To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting. Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from any loss during his occupancy. Perhaps this comes about because the companies themselves have accepted coverage of a tenant as a natural thing. Otherwise their insurance salesmen would have long ago made such need a matter of common knowledge by promoting the sale to tenants of a second fire insurance policy to cover the real estate.

Basic equity and fundamental justice upon which the equitable doctrine of subrogation is established requires that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary. The company affording such coverage should not be allowed to shift a fire loss to an occupying tenant even if the latter negligently caused it. New Hampshire Ins. Co. v. Ballard Wade, Inc., 17 Utah 2d 86, 404 P.2d 674 (1965). A parallel effect was reached in Hardware Mut. Ins. Co. v. Dunwoody, 194 F.2d 666 (9th Cir. 1952). For to conclude otherwise is to shift the insurable risk assumed by the insurance company from it to the tenant—a party occupying a substantially different position from that of a fire-causing third party not in privity with the insured landlord.

Failure of either the pleadings or the evidence to show the landlords' insurance carrier possesses a right of subrogation against the Jondahls furnishes another reason why it was fundamental error to instruct the jury that they should return a verdict for the insurance company unless "defendants prove . . . they . . . [were] not negligent."

The judgment below is therefore reversed and the cause remanded for a new trial.

NEPTUNE, P. J., and BACON, J., concur.