2006 VT 79

## Town of Stowe v. Stowe Theatre Guild

[908 A.2d 447]

No. 05-060

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 4, 2006

*William W. Cobb* of *Williams and Green, P.C.,* Morrisville, and *David S. Huberman* of *White and Williams LLP,* Philadelphia, Pennsylvania, for Plaintiff-Appellee.

*Gregory S. Clayton* of *Aten Clayton & Eaton PLLC,* Littleton, New Hampshire, for Defendant-Appellant.

¶ 1. **Burgess, J.** In this subrogation action, the Town of Stowe's insurer, Royal Insurance Co. (Royal), seeks to recover damages from

defendant, Stowe Theatre Guild, for negligently causing a fire in a town building where defendant leased performance space. Defendant claims the superior court erred in denying its motion for summary judgment and holding that it is not a coinsured under the Town of Stowe's property insurance policy. We granted the parties' joint request for interlocutory review of the superior court's summary judgment ruling, and we affirm.

¶ 2. We review de novo the superior court's denial of summary judgment. *Concord Gen. Mut. Ins. Co. v. Woods*, 2003 VT 33, ¶ 5, 175 Vt. 212, 824 A.2d 572. Summary judgment is appropriate only where the moving party demonstrates that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* The following facts are not in dispute.

¶ 3. Defendant is a nonprofit community theater group, managed by a board comprised mostly of Stowe taxpayers, that has used the auditorium of the Akely Memorial Building in Stowe since 1995 under an oral lease agreement. The building houses various town offices and the Stowe Historical Society as well as the auditorium. In exchange for seasonal use of the auditorium, defendant agreed to pay the Town one dollar annually and to make various improvements to the auditorium and stage that would remain with the building. The agreement contained no other express terms. Since the inception of the agreement, defendant's improvements to the auditorium have included a new air conditioning system, lighting, sound equipment, curtains, electrical upgrades, refinished paneling, and refurbished dressing rooms. The Town purchased fire insurance from Royal. Defendant purchased its own liability insurance.

¶ 4. In July 2000, defendant used a pyrotechnic device — theatrical flash powder — during a musical production. Defendant's negligent use of the flash powder resulted in a fire that activated the sprinkler system and caused significant water damage to the building.[1] Royal paid the Town's claim for damages and then commenced this subrogation action against defendant in the Town's name. Defendant moved for summary judgment, arguing, as it does now on appeal, that the subrogation action was barred because defendant should be treated as a coinsured under the Town's insurance. Defendant argues that it should be deemed a coinsured as a matter of equity, by virtue of its lease with the Town, and because defendant is a member of the public.

---

[1] The parties stipulated to the amount of damages as well as to defendant's negligence in causing the fire.

■ ¶ 5. Because defendant invokes equity to support its claimed protection against the subrogation claim of the landlord's insurer, we briefly review the equitable principles of subrogation. As explained in *Union Mutual Fire Insurance Co. v. Joerg*, 2003 VT 27, 175 Vt. 196, 824 A.2d 586, the doctrine of subrogation is premised on theories of promoting restitution and avoiding unjust enrichment. *Id.* ¶ 6. Subrogation allows an insurer to "stand[] in the shoes" of the insured in a lawsuit and thereby collect the amounts the insurer has been compelled to pay for losses caused by the actual wrongdoer, "who, in good conscience, should be required to pay." *Id.* (internal quotations omitted). Subrogation prevents unjust enrichment to the insured that would result from double recovery, and it prevents unjust enrichment to the tortfeasor that would result if the tortfeasor were absolved from liability, despite its wrongful actions, just because of the insured's foresight in obtaining insurance protection. 16 L. Russ & T. Segalla, Couch on Insurance 3d § 222:8, at 222-31 to 222-32 (3d ed. 2000). As a general rule, an insurer has no greater rights against a third party than its insured enjoys, while the third party retains any limitations on, and defenses to, liability against the insurer that existed against the insured. *Id.* § 222:5, at 222-19 to 222-21.

■ ¶ 6. This derivative nature of subrogation — that an insurer "stands in the shoes" of an insured — is reflected in our decision in *Joerg*, where we looked to the lease agreement to determine the landlord's and tenant's expectations and concluded that

> where the lease requires the landlord to carry fire insurance on the leased premises, such insurance is for the mutual benefit of landlord and tenant, and, as a result, the tenant is deemed a coinsured under the landlord's insurance policy and is protected against subrogation claims by the landlord's insurer.

2003 VT 27, ¶ 11. In *Joerg*, we declined to adopt the so-called *Sutton* rule, followed in a number of jurisdictions, which provides that a tenant is, per se, a coinsured under a landlord's fire insurance policy unless the parties expressly agree otherwise. *Id.* ¶¶ 7-9 (citing *Sutton v. Jondahl*, 532 P.2d 478, 482 (Okla. Ct. App. 1975)). Recognizing the *Sutton* rule as just one of several alternatives, we adopted instead a more flexible, case-by-case approach, whereby determination of "a tenant's liability to the landlord's insurer for negligently causing a fire depends on the

intent and reasonable expectations of the parties to the lease as ascertained from the lease as a whole." *Id.* ¶ 8; see also *id.* ¶ 9 (explaining that the case-by-case approach, also followed in numerous jurisdictions, is most consistent with Vermont law).

¶ 7. In keeping with the *Joerg* approach, we first consider defendant's claim that it should be deemed a coinsured under the lease. While the trial court emphasized defendant's purchase of its own liability policy as a reason for concluding it was not an implied coinsured on the Town's fire insurance, we reach the same conclusion for a different reason: there is no evidence whatsoever to suggest that either party considered any particular allocation of responsibility or risks beyond, or different from, the duties or liabilities ordinarily attending their relationship at common law. Negligence liability arises from breach of duty of care, independent from the purchase of insurance. The lease was not ambiguous about insurance, but simply silent. There is no missing term in the contract for the court to equitably divine, since insurance is not a necessary element to a binding landlord-tenant relationship. Rather, the lease left defendant and its landlord entirely free to choose whether or not to purchase insurance against their respective risks or liabilities.

¶ 8. Defendant urges the Court to reconsider what we declined to do three years ago in *Joerg*: import the per se rule of *Sutton* deeming tenants to be coinsureds under a landlord's insurance policy unless the parties expressly agree otherwise. Defendant argues that the *Sutton* approach is consistent with general landlord-tenant expectations and discourages the economic inefficiency of redundant insurance policies on the same risk. Defendant also submits that, since *Joerg* was decided, the *Sutton* rule now represents the view in a majority of jurisdictions.

¶ 9. We remain unpersuaded that the per se rule of *Sutton* better reflects the reasonable expectations of the parties, or better promotes economic efficiency, than the case-by-case analysis endorsed by *Joerg*. Because there is no reason to suspect a landlord and tenant cannot express insurance expectations in their lease, there is no need to adopt the per se rule of *Sutton* to impose an insurance term when the parties are silent. Nor does any economic efficiency appear from adopting a per se rule to immunize a tenant from tort liability by virtue of the landlord's purchase of insurance when, as here, the premiums were obviously not included in the token rent. Assuming, arguendo, that

*Joerg* no longer represents the majority view on this matter,[2] we still "find the case-by-case approach to be the most consistent with Vermont law. In determining the rights of the parties to a lease, this Court has consistently looked to the intent of the contracting parties as ascertained from the terms of the lease." *Joerg*, 2003 VT 27, ¶ 9. This approach also emphasizes, correctly, the court's role to "enforce the contract that was made [by the parties], not one we wish they made." *Id.* (internal quotations omitted).

¶ 10. Even under the *Joerg* standard, argues defendant, it is the silence of the lease that proves the parties' implied intent that the Town would assume what defendant characterizes as the "obligation" of insuring the building as a customary landlord expense. Because the lease expressly required tenant to pay only nominal rent and to assume the cost of improvements, defendant reasons, the Town implicitly retained responsibility for utilities, heat, maintenance, and all other typical carrying costs of building ownership, including insurance. Having not obligated defendant to buy insurance, defendant's logic continues, the parties must have left that obligation to the Town. It is

---

[2] Defendant promotes recent decisions from other jurisdictions that describe the *Sutton* approach as the majority position. See, e.g., *Cambridge Mut. Fire Ins. Co. v. Crete*, 846 A.2d 521, 523 (N.H. 2004) (holding that tenant is deemed landlord's coinsured with respect to fire damage to leased premises, absent express agreement to the contrary, and landlord may not hold tenant liable for uninsured losses from fire damage where landlord did not adequately insure building). While we may look to the reasoning of other states as persuasive authority, our ultimate objective is to reach decisions that comport with Vermont law and the reasonable expectations of the parties to the contract, and not to adopt a rule simply because there is apparent strength in numbers. As one court explained, "[t]here is clearly not a single accepted theory, even among the *Sutton* followers, and there is certainly no general consensus that landlords and tenants are co-insureds. Notwithstanding language in some opinions to the effect that *Sutton* represents a majority view, that is clearly not the case." *Rausch v. Allstate Ins. Co.*, 882 A.2d 801, 812 (Md. 2005) (citing cases). Indeed, *Sutton*'s reasoning is not without criticism. See, e.g., *Page v. Scott*, 567 S.W.2d 101, 104 (Ark. 1978) (rejecting the legal fiction that tenant paid insurance premium absent evidence that tenant paid any greater rent because of insurance and observing that "more often than not the market, i.e., supply and demand, is the controlling factor in fixing and negotiating rents"); *Koch v. Spann*, 92 P.3d 146, 152 (Or. Ct. App. 2004) (describing *Sutton* rule as contrary to presumption in Oregon that party seeking to contract away liability for negligence in advance of harm must clearly express that intent); 6A J. Appleman, Insurance Law and Practice § 4055, at 139 n.86.10 (Cum. Supp. 2006) (criticizing *Sutton* as citing no authority for its proposition that lessee is a coinsured comparable to a permissive user under an auto insurance policy).

not apparent, however, and defendant fails to explain, why such insurance would be obligatory, rather than remain elective, for either party.

¶ 11. Defendant's proposition would invert our decision in *Joerg* to require an inquiry into whether the lease obligated the *tenant*, rather than the landlord, to purchase insurance and, if not, to infer as a matter of law that the landlord's purchase of insurance coverage was for the benefit of the tenant. First, this approach merely imitates the rejected *Sutton* per se rule, except that instead of presuming the landlord's insurance is for the mutual benefit of the tenant absent express agreement to the contrary, defendant posits that absent the tenant's express agreement to insure, the landlord's insurance is presumed to be for the mutual benefit of the tenant. Second, defendant's theory appears to rest on a presumption — not recognized in our landlord-tenant law — that because landlords customarily insure their realty, tenants are presumed immune from liability for negligent damage to the leasehold unless the lease expressly obligates the tenant to purchase insurance. Last, defendant's logic fails to connect or equate the landlord's decision to insure its building with an intent to waive a tenant's tort liability for negligently causing fire damage.

¶ 12. Our examination of the lease terms in *Joerg* did not depend upon a presumption that the parties necessarily contemplated that one or the other would be obligated to purchase fire insurance for the building. Rather, we stated that where the landlord and tenant expressly agree that one of the parties will carry fire insurance on the leased premises, "it is only natural that they assume that the insurance is for their mutual benefit and that the parties will look only to the insurance for loss coverage." *Joerg*, 2003 VT 27, ¶ 10 (internal quotations omitted). Indeed, there would be no reason for the parties to include such a term as part of their bargain were it to benefit only the party obligated to satisfy the contract term.

¶ 13. We cannot conclude from the terms of the parties' agreement here that defendant reasonably expected the Town to provide fire insurance for the mutual benefit of the parties or to limit its recovery rights under traditional tort principles if defendant negligently damaged the premises. The nominal rent obligation in this lease, coupled with the absence of any mention or implication of insurance or waiver of liability in the parties' agreement, precludes an objectively reasonable conclusion that the landlord took its insurance rates into consideration when setting the rent or that the tenant reasonably expected insurance premiums to be paid out of its rent and for its

benefit. See *Joerg*, 2003 VT 27, ¶ 10 ("[W]here the lease expressly requires the landlord to maintain insurance on the premises, the landlord will take the cost of the insurance into account when setting rent."). We construe the language and acts of one party to a contract as the other party would reasonably construe them at the time the contract was made, *Conger v. Gruenig*, 117 Vt. 559, 562, 96 A.2d 821, 823 (1953), and the lease here nowhere suggests that tenant would be held harmless by landlord for negligent damage to the building.

¶ 14. Defendant analogizes its situation to cases where this Court disallowed subrogation claims by a landlord's insurer by extending the tenant's status of coinsured to family members living in, and allegedly responsible for damaging, an apartment, *Joerg*, 2003 VT 27, ¶ 16 (concluding that "family members living in the leased premises should be included as implied coinsureds"), and to an employee of a corporate tenant whose negligence allegedly caused a fire in the building, *Fairchild Square Co. v. Green Mountain Bagel Bakery, Inc.*, 163 Vt. 433, 442, 658 A.2d 31, 36-37 (1995) (extending landlord's express waiver of recovery against bakery tenant to all bakery employees who could render employer liable under doctrine of respondeat superior). Defendant is not so close to either circumstance as it might imagine. In *Joerg*, the tenant's lease expressly required the landlord to insure the building in return for the rent, leading to the conclusion that the same rent entitled the tenant to be treated as a coinsured, and that all related residents of the same leasehold logically enjoyed the same status. *Joerg*, 2003 VT 27, ¶ 16 ("We would greatly undermine our holding that a subrogation action cannot be brought against the tenants because the lease showed that the landlord was responsible for fire insurance if we allowed the subrogation action to be brought against family members living in the home."). In *Fairchild Square Co.*, the express and mutual waiver in the lease between the commercial landlord and its bakery tenant of "all right of recovery . . . by way of subrogation or otherwise," 163 Vt. at 436, 658 A.2d at 33, against one another for any fire damage evinced the parties' shared intent "that their fire insurers would assume the ultimate risk" without further recourse, including subrogation claims against their employees, *id.* at 442, 658 A.2d at 36. As we stated further, "the essential purpose of [the waiver], looking solely to insurance for recovery, would be significantly undermined by denying employees the insulation from liability provided their employers." *Id.* In the instant case, defendant shows no basis from which to derive similar protections in the absence of either an express obligation of the

Town to insure the building, or an expressed intention by the Town to waive all rights of recovery against its tenant.

¶ 15. Defendant also contends that subrogation results in a "windfall" to the insurer of the building, because the insurer should reasonably expect to pay for losses caused by negligent acts of others. This argument ignores the declared purpose of subrogation — to enable the insurer to recover its payout from the party whose negligence was responsible for the loss in the first place. An insurer always expects to pay covered losses, regardless of whether it will be able to recover through subrogation.[3] Thus, under *Joerg*, the existence of a contractual waiver of liability and insurance obligations between landlord and tenant depends on the parties' reasonable expectations under the terms of their lease, and not from the expectations of the insurer.

¶ 16. Finally, defendant argues that it should be deemed an implied coinsured of the Town because it is a community-based organization using a publicly owned building dedicated to public use. Defendant contends that because tax dollars paid the insurance premiums to protect the public interest in the building, it would be inequitable to hold defendant, an organization run by a board mostly comprised of taxpaying members of the same body politic, liable in tort for damages to the building. Allowing subrogation in this case, posits defendant, would be akin to holding a student liable when an errant ball breaks a window during recess or holding a taxpayer liable for breaking a chair at town meeting.

¶ 17. We need not reach the issue raised by defendant's hypothetical arguments because defendant is neither a member of the Town nor a taxpayer, and the situations described do not necessarily suggest negligence. Equitable concerns, including subrogation, are not absolute and competing equities must always be considered. *Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 132 Vt. 341, 346, 318 A.2d 659, 662 (1974) ("The subrogee must have clear equity and subrogation is defeated by countervailing equities."). In the instant case, however, no

---

[3] See 16 L. Russ & T. Segalla, Couch on Insurance 3d § 222:4, at 222-17 (3d ed. 2000):

It takes little effort . . . to see that it is not factually possible for an insurer to always recover loss payments, for the simple reason that not all losses are someone's "fault;" hence, there is often no one from whom recovery can logically be had. In some additional portion of cases, even though a recovery might technically be had, it is precluded by practicalities such as the responsible party being unknown, unlocatable, or so bereft of assets as to be "judgment proof."

countervailing equities are evident to mitigate against an insurer holding a tortfeasor liable for damages to a public building simply because the tortfeasor is a member of the public.

*Affirmed.*