ROTHENBERG, J.
 

 State Farm Florida Insurance Co., as subrogee of Jose R. Masvidal, appeals from a final summary judgment entered in favor of Aleli Loo. We reverse.
 

 I.Factual and Procedural Background
 

 State Farm issued a rental dwelling insurance policy to Masvidal (“the Landlord”), insuring property he leased to Loo (“the Tenant”). During the term of the lease, a fire occurred at the leased premises, and State Farm paid the Landlord for the loss. State Farm subsequently filed a subrogation action against the Tenant to recover the amounts paid to Masvidal, alleging that the Tenant’s negligence caused the fire.
 
 [1]
 

 The Tenant filed an amended answer denying that State Farm had a right of subrogation against her. Relying on
 
 Sutton v. Jondahl,
 
 532 P.2d 478 (Okla.Civ.App.1975), the Tenant subsequently moved for summary judgment, arguing that a tenant is an implied co-insured under a landlord’s insurance policy, and therefore, State Farm cannot seek subrogation against her because an insurer cannot seek subrogation against its own insured or co-insured. Agreeing with the Tenant, the trial court entered final summary judgment in favor of the Tenant. State Farm’s appeal follows.
 

 II.Standard of Review
 

 Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000). Thus, we review the trial court’s entry of final summary judgment de novo.
 
 Id.; Sheikh v. Coregis Ins. Co.,
 
 943 So.2d 242, 243 (Fla. 3d DCA 2006).
 

 III.Issue
 

 The issue presented on appeal is whether a landlord’s insurer may bring a subro-gation action against the landlord’s tenant to recover amounts the insurer paid under the insurance policy for damage to the leased premises that the insurer attributes to the tenant’s negligence.
 

 IV.Analysis
 

 Generally, when an insurer pays the claim of its insured, the insurer stands in the shoes of its insured, and the insurer may bring a subrogation action against the tortfeasor to recover the amounts paid under the insurance policy.
 
 See Fireman’s Fund Ins. Co. v. Rojas,
 
 409 So.2d 1166, 1167 (Fla. 3d DCA 1982). The insurer, however, may not maintain a subrogation action against its own insured even if the insured’s negligence caused the loss.
 
 See Bulone v. United Servs. Auto. Ass’n,
 
 660 So.2d 399, 404 (Fla. 2d DCA 1995);
 
 Ray v. Earl,
 
 277 So.2d 73, 76 (Fla. 2d DCA 1973);
 
 Smith v. Ryan,
 
 142 So.2d 139, 141 (Fla. 2d DCA 1962).
 

 Here, the Tenant urges this Court to adopt the holding in
 
 Sutton
 
 — a tenant is an implied co-insured under her landlord’s insurance policy unless there is an express agreement between the landlord and tenant to the contrary — and therefore, to af
 
 *749
 
 firm the order under review because, as a co-insured, State Farm cannot bring a sub-rogation action against her. In response, State Farm contends that this Court addressed the issue under review in
 
 Tout v. Hartford Accident & Indemnity Co.,
 
 390 So.2d 155 (Fla. 3d DCA 1980) (affirming final judgment against tenant and in favor of landlord’s insurance carrier, finding that the terms of the parties’ lease did not express an intent that the landlord would exculpate the tenants for damage they negligently caused), and based on
 
 Tout,
 
 the order under review must be reversed.
 

 In determining whether a landlord’s insurer may bring a subrogation action against a negligent tenant, courts have typically adopted one of three views: (1) the approach set forth in
 
 Sutton;
 
 (2) an approach that is contrary to
 
 Sutton,
 
 which is known as the
 
 “anti-Sutton
 
 approach”; and (3) the approach outlined in
 
 Tout,
 
 which is known as the “case-by-case approach.” The first view we will address is the view presented in
 
 Sutton.
 
 In
 
 Sutton,
 
 John Jondahl leased a home from Earl and Lavon Sutton. During the term of the lease, Mr. Jondahl’s ten-year-old son started a fire while experimenting with his chemistry set. The Suttons’ insurer, Central Mutual Insurance Company, paid the loss and thereafter filed a subrogation action against Mr. Jondahl and his son, seeking to recover the monies it paid to its insureds, the Suttons.
 
 [2]
 
 Following a jury trial, the trial court entered final judgment in favor of Central Mutual and solely against Mr. Jondahl. Mr. Jondahl appealed the final judgment, arguing that Central Mutual could not bring a subrogation action against him because, as the tenant of its policyholders, he is an implied co-insured under the policy. The Court of Appeals of Oklahoma agreed with Mr. Jon-dahl’s argument, stating as follows:
 

 Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance. This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises-the former owns the fee and the latter has a possessory interest. Here the landlords (Suttons) purchased the fire insurance from Central Mutual Insurance Company to protect such interests in the property against loss from fire. This is not uncommon. And as a matter of sound business practice the premium paid had to be considered in establishing the rent rate on the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. And of course it follows then that the tenant actually paid the premium as part of the monthly rental.
 

 The landlords of course could have held out for an agreement that the tenant would furnish fire insurance on the premises. But they did not. They elected to themselves purchase the coverage. To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting.
 

 Id.
 
 at 482 (citations omitted). The view taken in
 
 Sutton
 
 is commonly referred to as the
 
 “Sutton
 
 doctrine” or the “anti-subroga
 
 *750
 
 tion rule,” and has been adopted in several jurisdictions.
 
 [3]
 

 The second view, which is contrary to the principle in
 
 Sutton,
 
 allows for a presumption in favor of subrogation and permits an insurer to bring a subrogation against the tenant absent an express or implied agreement to the contrary.
 
 [4]
 
 This view is commonly referred to as the “anti-
 
 Sutton
 
 approach.”
 

 Lastly, is the third view, which this Court applied in
 
 Tout
 
 and subsequent courts have referred to as the “case-by-case analysis,”
 
 [5]
 
 where there is no presumption in favor or against subrogation. Instead, the “lease as a whole” is examined “in order to ascertain the intent of the parties ‘as to who should bear the risk of loss for damage to the leased premises caused by the tenant’s negligence.’ ”
 
 Am. Family,
 
 757 N.W.2d at 592 (quoting
 
 TriPar Invs.,
 
 680 N.W.2d at 197);
 
 see also Rausch,
 
 882 A.2d at 806-07 (“The third principle is an application of basic contract law to the landlord-tenant relationship. Just as a lease may negate a tenant’s common law tort liability, it may, independently of tort liability, contractually impose liability on the tenant for damage to the leased premises resulting from the tenant’s negligent act or omission, either by a specific lease provision to that effect or by a covenant on the part of the tenant to return the property, save for ordinary
 
 *751
 
 wear and tear, in the same condition as the tenant received it.”);
 
 Dattel Family Ltd. P’ship v. Wintz,
 
 250 S.W.3d 883, 890 (Tenn.App.2007) (explaining that under the “case-by-case approach, there is no presumption regarding whether the tenant is an implied co-insured under the landlord’s insurance policy. Rather, the court looks at the lease as a whole, along with any other relevant evidence, to ascertain whether it was reasonably anticipated by the landlord and the tenant that the tenant would be liable to the landlord’s insurance carrier, via subrogation, for any damages resulting from the tenant’s negligence”). As State Farm correctly argues, the principle underlying the case-by-case analysis was applied in
 
 Tout,
 
 and therefore, applicable in this district.
 

 In
 
 Tout,
 
 William and Jean Tout entered into a contract to purchase Michael S. Greenwald’s house, which permitted the Touts to lease the premises from Mr. Greenwald prior to closing. In addition, the contract contained the following “exculpatory clause”: “Seller assumes risk of loss from fire or otherwise until closing. ...” During the rental period, a fire broke out at the premises, and Green-wald’s insurer, Hartford Accident & Indemnity Company, paid the loss to Green-wald. Thereafter, alleging that the Touts’ negligence caused the fire, Hartford filed a subrogation action against the Touts, seeking to recover the amount paid to Green-wald. In defending the subrogation action, the Touts raised the exculpatory clause as an affirmative defense, which the trial court eventually struck. Following a jury trial, the trial court entered a final judgment in favor of Hartford. On appeal, the Touts argued, in part, that the trial court erred by granting Hartford’s motion to strike the affirmative defense. This Court disagreed, finding that the “exculpatory clause” did not defeat Hartford’s sub-rogation rights because “a limitation of liability for one’s negligent acts cannot be inferred unless such intention is expressed in unequivocal terms.”
 
 Tout,
 
 390 So.2d at 156;
 
 see also Conch Cove Inc. v. Hartford Accident & Indem. Co.,
 
 473 So.2d 768, 771 (Fla. 4th DCA 1985) (holding that clauses in the lease between a marina and boat owner, requiring the boat owner to carry insurance on the boat and agreeing to hold the marina harmless and releasing the marina “from any and all liability for loss or damage” to the boat due to fire, was “inadequate to demonstrate intent on the part of the parties to exculpate [the marina] from liability for its own negligence or to shift such liability to an insurer”).
 

 Based on this Court’s decision in
 
 Tout,
 
 we conclude that the trial court applied the incorrect legal standard when ruling on the Tenant’s motion for summary judgment. Thus, we will examine the terms of the parties’ lease to determine if, as a matter of law, the parties intended that the Tenant would not be held liable for her negligent acts that damaged the leased premises.
 
 See Thompson v. Douds,
 
 852 So.2d 299, 305 (Fla. 2d DCA 2003) (explaining that when the trial court enters final summary judgment based on its application of an incorrect legal standard, an appellate court will reverse and remand to the trial court for a new hearing to “reconsider its decision in light of the proper legal standard”; however, the appellate court will simply reverse the entry of final summary judgment if it is clear from the record that the movant cannot prevail, as a matter of law, upon the application of the correct legal standard).
 

 In determining the intent of the parties, we examine the lease as a whole, with the primary focus on paragraphs 9 and 10. Paragraph 9 of the lease provides, in part, as follows: “Damage to Premises. If the demised premises ... shall be partially
 
 *752
 
 damaged by fire ... not due to Lessee’s negligence ..., the premises shall be promptly repaired by Lessor and there shall be an abatement of rent corresponding with the time during which ... the leased premises may have been untenanta-ble” Further, paragraph 10 provides: “Dangerous Materials. Lessee shall not keep or have on the leased premises any article or thing of a dangerous, inflammable, or explosive character that might unreasonably increase the danger of fire on the leased premises or that might be considered hazardous or extra hazardous by any responsible insurance company.”
 

 A close reading of the provisions contained in paragraphs 9 and 10 reflect that they do not provide that the Landlord may
 
 not
 
 hold the Tenant liable for her negligence or that the Landlord has agreed to assume the responsibility to purchase a rental dwelling insurance policy for the Tenant’s benefit. Rather, paragraph 9 merely indicates that if the property is damaged by fire that is not caused by the Tenant’s negligence, the Landlord will repair the damages and the Tenant will not be required to pay rent while the premises are untenantable. Moreover, paragraph 10 does nothing more than prohibit the Tenant from keeping “dangerous, inflammable, or explosive” materials on the leased premises. Further, there is no provision in the parties’ lease that (1) exculpates the Tenant from liability for her own negligence; (2) requires the Landlord to maintain insurance for the benefit of the Tenant; or (3) shifts any loss incurred as a result of the Tenant’s negligence to the Landlord.
 

 Based on our review of the lease as a whole, we conclude that, as a matter of law, State Farm may proceed with its sub-rogation action against the Tenant because the parties did not in “unequivocal terms” intend to limit the Tenant’s liability for her negligent acts.
 
 Tout,
 
 390 So.2d at 156;
 
 Cf U.S. Fire Ins. Co. v. Norlin Indus., Inc.,
 
 428 So.2d 325, 326 (Fla. 1st DCA 1983) (affirming dismissal of a subrogation action filed by landlord’s insurer against allegedly negligent tenant where lease required the landlord to maintain fire insurance on the leased premises, concluding that “the obvious intent of the parties was to shift the risk of damages caused by fire to an insurer”);
 
 Smith v. Ryan,
 
 142 So.2d 139, 141 (Fla. 2d DCA 1962) (holding that “[i]t is never presumed that a contract is intended to protect one against his own negligence, and hence, unless it clearly so states, the courts hold that such was not the intention”; affirming final summary judgment in subrogation action entered in favor of allegedly negligent contractor where contract that contractor and property owner entered into “clearly requires the owner to carry fire insurance naming the contractor as one of the insured, thereby bringing the contractor within the provisions of law that an insurer cannot maintain a subrogation suit against its own insured”).
 

 Although not dispositive, we briefly address the Tenant’s contention that the First District Court of Appeal in
 
 Continental Insurance Co. v. Kennerson,
 
 661 So.2d 325 (Fla. 1st DCA 1995), applied the
 
 Sutton
 
 doctrine when it held that the landlord’s insurer, Continental Insurance Co., could not exercise any right of subrogation against the negligent tenant. The
 
 Kenner-son
 
 court stated that its holding was “clearly in keeping with the modern trend of authority,”
 
 id.
 
 at 330, which it identified as the approach set forth in
 
 Sutton.
 
 In reality, however, the opinion reflects that the First District’s holding was actually based on the application of the case-by-case analysis because the court considered several provisions in the parties’ lease to determine their intent as to who should bear the risk of loss for damage to the leased premises caused by the tenant’s
 
 *753
 
 negligence. 661 So.2d at 327-28. In concluding that the trial court correctly entered final summary judgment in favor of the tenant, thereby concluding that Continental Insurance did not have a right of subrogation against the tenant, the First District relied on lease provisions requiring the landlord to bear the expense of repairing any fire damage and to procure fire insurance on the property, “the cost of which the tenant has agreed to bear and has in fact borne.”
 
 Id.
 
 at 330.
 

 V. Conclusion
 

 Because the trial court applied the incorrect legal standard — the
 
 Sutton
 
 doctrine— when ruling on the Tenant’s motion for summary judgment, and it is clear from the record before this Court that the Tenant cannot prevail upon the application of the correct legal standard — the case-by-case analysis — we reverse the order under review.
 

 Reversed.
 

 [1]
 

 . State Farm also filed suit against Jorge Cava, a co-tenant under the lease, but Cava failed to answer the complaint, and a default was entered against him.
 

 [2]
 

 . The lawsuit was initially filed in the Suttons' names. However, Central Mutual was required to substitute itself as the plaintiff as it was the real party in interest.
 

 [3]
 

 . The trial court also relied on Nebraska Supreme Court's decision in
 
 Tri-Par Investments, L.L.C. v. Sousa,
 
 268 Neb. 119, 680 N.W.2d 190 (2004), which adopted the
 
 Sutton
 
 doctrine. In addition to Nebraska and Oklahoma, several other jurisdictions have adopted the anti-subrogation rule.
 
 See DiLullo v. Joseph,
 
 259 Conn. 847, 792 A.2d 819 (2002);
 
 Lexington Ins. Co. v. Raboin,
 
 712 A.2d 1011 (Del.Super.Ct.1998);
 
 N. River Ins. Co. v. Snyder,
 
 804 A.2d 399 (Me.2002);
 
 Peterson v. Silva,
 
 428 Mass. 751, 704 N.E.2d 1163 (1999);
 
 United Fire & Cas. Co. v. Bruggeman,
 
 505 N.W.2d 87 (Minn.Ct.App.1993);
 
 Safeco Ins. Co. v. Capri,
 
 101 Nev. 429, 705 P.2d 659 (1985);
 
 Cmty. Credit Union of New Rockford, N.D. v. Homelvig,
 
 487 N.W.2d 602 (N.D.1992);
 
 GNS P'ship v. Fullmer,
 
 873 P.2d 1157 (Utah Ct.App.1994);
 
 Cascade Trailer Court v. Beeson,
 
 50 Wash.App. 678, 749 P.2d 761 (1988).
 

 [4]
 

 . The anti-subrogation approach has been adopted by several jurisdictions.
 
 See U.S. Fid. & Guar. Co. v. Let's Frame It, Inc.,
 
 759 P.2d 819 (Colo.Ct.App.1988);
 
 Fed. Ins. Co. v. Paulk,
 
 173 Ga.App. 266, 325 S.E.2d 886 (1985);
 
 Neubauer v. Hostetter,
 
 485 N.W.2d 87 (Iowa 1992);
 
 N.H. Ins. Co. v. Hewins,
 
 6 Kan.App.2d 259, 627 P.2d 1159 (1981);
 
 Am. Guar. & Liab. Ins. Co. v. Little,
 
 328 So.2d 706 (La.Ct.App.1976);
 
 Rausch v. Allstate Ins. Co.,
 
 388 Md. 690, 882 A.2d 801 (2005);
 
 Paramount Ins. Co. v. Parker,
 
 236 Miss. 872, 112 So.2d 560 (1959);
 
 Zoppi v. Traurig,
 
 251 N.J.Super. 283, 598 A.2d 19 (1990);
 
 Galante v. Hathaway Bakeries, Inc.,
 
 6 A.D.2d 142, 176 N.Y.S.2d 87 (N.Y.App.Div.1958);
 
 Winkler v. Appalachian Amusement Co.,
 
 238 N.C. 589, 79 S.E.2d 185 (1953);
 
 Wichita City Lines, Inc. v. Puckett,
 
 156 Tex. 456, 295 S.W.2d 894 (1956).
 

 [5]
 

 .The case-by-case analysis has been followed by several states.
 
 See 56 Assocs. ex rel. Paolino v. Frieband,
 
 89 F.Supp.2d 189 (D.R.I.2000);
 
 Gen. Accident Fire & Life Assurance Corp. v. Traders Furniture Co.,
 
 1 Ariz.App. 203, 401 P.2d 157 (1965);
 
 Fire Ins. Exch. v. Hammond,
 
 83 Cal.App.4th 313, 99 Cal.Rptr.2d 596 (2000);
 
 Bannock Bldg. Co. v. Sahlberg,
 
 126 Idaho 545, 887 P.2d 1052 (1994);
 
 Dix Mut. Ins. Co. v. LaFramboise,
 
 149 Ill.2d 314, 173 Ill.Dec. 648, 597 N.E.2d 622 (1992);
 
 United Farm Bureau Mut. Ins. Co. v. Owen,
 
 660 N.E.2d 616 (Ind.Ct.App.1996);
 
 Britton v. Wooten,
 
 817 S.W.2d 443 (Ky.1991);
 
 Rausch v. Allstate Ins. Co.,
 
 388 Md. 690, 882 A.2d 801 (2005);
 
 Agra-By-Products, Inc. v. Agway, Inc.,
 
 347 N.W.2d 142 (N.D.1984);
 
 U.S. Fire Ins. Co. v. Phil-Mar Corp.,
 
 166 Ohio St. 85, 139 N.E.2d 330 (1956);
 
 Koch
 
 v.
 
 Spann,
 
 193 Or.App. 608, 92 P.3d 146 (2004);
 
 Remy v. Michael D’s Carpet Outlets,
 
 391 Pa.Super. 436, 571 A.2d 446 (1990);
 
 Am. Family Mut. Ins. Co. v. Auto-Owners Ins. Co.,
 
 757 N.W.2d 584 (S.D.2008);
 
 Union Mut. Fire Ins. Co. v. Joerg,
 
 175 Vt. 196, 824 A.2d 586 (2003);
 
 Monterey Corp. v. Hart,
 
 216 Va. 843, 224 S.E.2d 142 (1976).