# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DONEGAL MUTUAL INSURANCE COMPANY A/S/O SEAFORD APARTMENT VENTURES LLC T/A THE VILLAGES OF STONEY BROOK APARTMENTS, | § § § § § | No. 379, 2022 |
| | § | Court Below: Superior Court |
| Plaintiff Below, Appellant, | § § § | of the State of Delaware |
| | § | C.A. No. S21C-08-013 |
| v. | § § | |
| SATHIYASELVAM THANGAVEL and SASIKALA MUTHUSAMY, | § § § § | |
| Defendants Below, Appellees. | § § § | |

Submitted: April 19, 2023
Decided: July 18, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Jennifer A. Sutton, Esquire, MARGOLIS EDELSTEIN, Wilmington, Delaware, *for Plaintiff Below, Appellant Donegal Mutual Insurance Company*.

Wade A. Adams, III, Esquire, Marissa D. White, Esquire, LAW OFFICES OF WADE A. ADAMS, III, Newark, Delaware, *for Defendants Below, Appellees Sathiyaselvam Thangavel and Sasikala Muthusamy*.

**SEITZ**, Chief Justice:

Under the *Sutton* rule, landlords and tenants are co-insureds under the landlord's fire insurance policy unless a tenant's lease clearly expresses an intent to the contrary.[1] If the *Sutton* rule applies, the landlord's insurer cannot pursue the tenant for the landlord's damages by way of subrogation. In this case, the Superior Court ruled in the tenants' favor at summary judgment that the *Sutton* rule applied because the lease did not clearly express an intent to hold the tenants liable for the landlord's damages. We agree and affirm.

I.

Sathiyaselvam Thangavel and Sasikala Muthusamy were tenants who leased an apartment from Seaford Apartment Ventures, LLC. The complaint filed by Seaford Apartment's insurer, Donegal Mutual Insurance Company, alleged that the tenants hit a sprinkler head while they flew a drone inside the apartment. Water sprayed from the damaged sprinkler head and caused damage to the apartment building.

Seaford Apartment filed an insurance claim with Donegal, who paid $77,704.06 to repair the water damage. Donegal then brought this action against the tenants through subrogation and alleged that the tenants were negligent and breached

---

[1] *Sutton v. Jondahl*, 532 P.2d 478, 482 (Okla. Civ. App. 1975).

2

the property's rules and regulations.  Donegal sought to recover the repair costs from the tenants.

In relevant part, the tenants' lease provided as follows:

12. NO LIABILITY FOR LOSS OR DAMAGE TO TENANTS' PERSONS OR PROPERTY; INDEMNITY TO LANDLORD.

(a) Tenants agree to be solely responsible for all loss or damages to Tenants or their property or to any other person which may be situated in the Rental Unit and storage area; gross negligence of Landlord, its servant, agents or employees excepted[.]  In addition, Tenants agree to indemnify and save Landlord harmless from any and all loss occasioned by the tenant's breach of any of the covenants, terms and conditions of the Agreement, or caused by the tenant(s) family, guests, visitors, agents or employees . . . .[2]

(b) Tenant agrees to procure and maintain adequate content and liability insurance in an amount not less than $300,000.00 to afford protection against the risks herein assumed . . . .[3]

29. TENANT RESPONSIBLE FOR DAMAGES.

Tenant by accepting this agreement covenants and agrees that tenant will be responsible for all damages accidentally, maliciously, intentionally, or negligently caused by the tenant, tenant's family, guests or invitees to any of the property of the landlord.[4]

The tenants moved for summary judgment and argued that the law considers them co-insureds under the landlord's fire insurance policy absent an express agreement to the contrary.  They relied on a legal defense from the landmark case, *Sutton v. Jondahl*.  In *Sutton*, the landlord's insurer paid for the fire loss caused by the tenant's minor son's unsupervised chemical experiments in the rented home.

---

[2] Corrected App. to Opening Br. at A-017 [hereinafter "A__"] (Compl.).
[3] *Id.*
[4] A-020.

The Oklahoma Court of Appeals held that the insurer did not have a right to subrogation because "when fire insurance is provided for a dwelling[,] it protects . . . the possessory interests of a tenant absent an express agreement by the latter to the contrary."[5]

The Superior Court granted the tenants' summary judgment motion. It concluded that the lease in this case was substantially similar to the leases in three other Delaware cases – *Lexington Insurance Co. v. Raboin*,[6] *Deloach v. Houser*,[7] and *State Farm Fire & Casualty Co. v. Lambert*[8] – all of which found that the *Sutton* rule applied and that the leases did not clearly express an intent to the contrary.[9]

On appeal, Donegal claims that the Superior Court erred because the lease here is materially different from the leases in the cases noted above. The Seaford Apartment lease provisions, according to Donegal, show a clear agreement that the tenants are liable for the water damage they caused. Even if the lease is unclear, Donegal argues that the case should proceed to discovery if there is any ambiguity about the parties' intent about the tenants' liability.

Our standard of review is *de novo*.[10] "Summary judgment may be granted if there are no material issues of fact in dispute and the moving party is entitled to

---

[5] *Sutton*, 532 P.2d at 482.
[6] 712 A.2d at 1016.
[7] 2018 WL 5899080, at *2.
[8] 2017 WL 5593784, at *3 (D. Del. Nov. 21, 2017).
[9] *Donegal Ins. Grp. v. Thangavel*, 2022 WL 4284787, at *2 (Del. Super. Sept. 15, 2022).
[10] *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 241 n.14 (Del. 2009).

judgment as a matter of law. The facts and all reasonable inferences must be considered in the light most favorable to the non-moving party."[11]

## II.

## A.

In *Lexington*, apartment tenants allegedly caused a fire by installing a ceiling fan in violation of the landlord's rules and regulations.[12] The landlord's insurer attempted to recover against the tenant for the landlord's damages through subrogation. The Superior Court granted summary judgment to the tenants, which was affirmed on appeal. The Superior Court held that "fire insurance secured by the landlord [is] obtained for the mutual benefit of landlord and lessee."[13] Therefore, "in the absence of an express agreement or provision in the lease that would place liability on the tenant for the tenant's negligence in causing the fire, the landlord's carrier cannot obtain subrogation against the tenant."[14] The court pointed out that, practically speaking, tenants contribute to the cost of the landlord's fire insurance premiums through their rental payments:

> The landlords of course could have held out for an agreement that the tenant would furnish fire insurance on the premises. But they did not. They elected to purchase the coverage. To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment . . . renting. Prospective tenants

---

[11] *Id.* at 241.
[12] *Lexington*, 712 A.2d at 1013.
[13] *Id.* at 1015.
[14] *Id.* at 1016.

5

ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there were such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself . . . .[15]

Continuing, the court also held that "for purposes of preventing subrogation, residential tenants are co-insureds, absent some clearly expressed intent in the lease to the contrary."[16] According to the court:

> Such a position more equitably squares with the reality of the landlord's generally dominant relationship over the residential tenant, the typical expectations of the parties with regard to the assignment of risk of loss for fire, the practical effect that rental payments contribute to the cost of the landlord's fire insurance premiums, the mutual benefits derived by the parties from dividing respective liabilities, and the efficiency of not carrying duplicative insurance coverage on the same property.[17]

The *Lexington* court found that the lease "clearly contemplates a division of risks between landlord and tenant."[18] On the tenant side, they had to secure insurance coverage against loss to the tenant's person or property located within the rental unit or common areas and agreed to indemnify the landlord against any loss by the tenant. The tenant could not impair the landlord's fire or hazard insurance. And if the landlord had to pay more for its coverage, the tenant was liable for the additional expense. The lease did not provide that the tenant had to obtain fire

---

[15] *Id.* (omissions in original) (quoting *Sutton*, 532 P.2d at 482).
[16] *Id.*
[17] *Id.*
[18] *Id.* at 1014.

insurance to cover the landlord's property or that the tenant was liable if they were negligent in causing a fire.[19]

In *Deloach*, the Superior Court found that the lease was indistinguishable from the lease in *Lexington*.[20] The lease contained provisions that the tenants should "return the property in good condition, [] pay for damages in excess of normal wear and tear, and [] pay for any damages to the landlord's property caused by the tenant or his relatives or guests."[21] The court found these did not "satisfy *Lexington's* mandate that a risk-shifting provision placing the risk of loss by fire to the rental unit or the whole property caused by the tenant's negligence be stated clearly and unequivocally in the lease."[22]

Similarly, in *Lambert*, the lease provided that the tenant was liable for all damages to the property caused by the tenant.[23] The United States District Court in District of Delaware found that "[t]he broad language the Lease utilizes does not show that the parties specifically considered and intended to hold Defendant liable for negligent fires."[24]

---

[19] *Id.*
[20] 2018 WL 5899080, at *1.
[21] *Id.*
[22] *Id.*
[23] 2017 WL 5593784, at *3.
[24] *Id.*

7

B.

The Superior Court correctly found that paragraphs 12(a), 12(b), and 29 of the Seaford Apartment lease did not clearly express an intent that the tenants were responsible for the water damage in this case.[25] The lease provisions in this case are identical or substantially similar to the lease provision in the three earlier cases:

| Seaford Apartment Lease | *Lexington*, *Deloach*, and *Lambert* Leases |
|---|---|
| "Tenants agree to be solely responsible for all loss or damages to Tenants or their property or to any other person which may be situated in the Rental Unit and storage area; gross negligence of Landlord, its servant, agents or employees excepted . . . ."[26] | "Resident agrees to be solely responsible for all loss [or] damage to Resident's person or property or to the property of any other person which may be situate in the rental unit during the term of this rental agreement or any renewal or extension thereof, including any loss of fire or theft in and about the rental unit and storage area, negligence of Owner, its servants, agents, or employees excepted . . . ."[27] |
| ". . . Tenants agree to indemnify and save Landlord harmless from any and all loss occasioned by the tenant's breach of any of the covenants, terms and conditions of the Agreement, or caused by the tenant(s) family, guests, visitors, agents or employees."[28] | ". . . Resident agrees to indemnify and save Owner harmless from any and all loss occasioned by Resident's breach of the covenants, terms and conditions of this general agreement or caused by his family, guests, visitors, agents or employees."[29] |

---

[25] Donegal does not dispute that the *Sutton* rule applies to the water damage claims in this case. Reply Br. at 4 ("Appellant agrees with Appellee that the reasoning and ruling of *Lexington* applies in this case even though the damage was caused by water.").

[26] A-017 (Paragraph 12(a) of the lease).

[27] *Lexington*, 712 A.2d at 1013.

[28] A-017 (Paragraph 12(a) of the lease).

[29] *Lexington*, 712 A.2d at 1013.

| | |
|---|---|
| "Tenant agrees to procure and maintain adequate content and liability insurance in an amount not less than $300,000.00 to afford protection against the risks herein assumed . . . ."[30] | ". . . [R]esident agrees to procure content and liability insurance to afford protection to himself against risks herein assumed."[31] |
| "Tenant by accepting this agreement covenants and agrees that tenant will be responsible for all damages accidentally, maliciously, intentionally, or negligently caused by the tenant, tenant's family, guests or invitees to any of the property of the landlord."[32] | "The tenant will be responsible for damages to the unit and premises, other than normal wear and tear, that are caused by any member of the tenant's family, guests of the tenant, and persons under the tenant's control . . . ."[33] |

As the *Lexington* court pointed out, these general provisions do not support a specific intent to require the tenant to obtain fire insurance to cover the landlord's property or that the tenant would be liable if they were negligent in causing a fire.[34] The Seaford Apartment lease also has a provision suggesting that it is the landlord's

---

[30] A-017 (Paragraph 12(b) of the lease).

[31] *Lexington*, 712 A.2d at 1013.

[32] A-020 (Paragraph 29 of the lease).

[33] *Lambert*, 2017 WL 5593784, at *1 (omission in original). *See also Deloach*, 2018 WL 5899080, at *1 (lease provisions included "the tenant's obligation to . . . pay for any damages to the landlord's property caused by the tenant or his relatives or guests.").

[34] *See also Middlesex Mut. Assur. Co. v. Vaszil*, 900 A.2d 513, 518 (Conn. 2006) (holding that the insurer was not entitled to subrogation for the fire loss against the tenant because the lease "does not remotely inform the defendants that they would be liable to their landlord's insurer for any casualty fire damages to the landlord's building."); *Uren v. Dakota Dust-Tex, Inc.*, 643 N.W.2d 678, 680–81 (N.D. 2002) (holding that an indemnification provision and a provision requiring liability insurance in the lease did not constitute "express agreement indicating [the tenant] should not be considered an implied co-insured under [the landlord's] property insurance policy"). *See also* 46A C.J.S. Insurance § 2040 (2023).

responsibility to maintain insurance for fire and other hazards, and the tenant cannot engage in an activity that would raise the insurance premium.[35]

For the first time in its reply brief, Donegal cites *Deardorff Associates, Inc. v. Brown*.[36] There, the Superior Court found that the *Sutton* rule did not apply to shield the tenant from a subrogation action for negligently causing a fire.[37] It found a specific intent to hold the tenant liable for fire damage in a subrogation action through two lease provisions – a maintenance provision providing that the "Landlord shall not be responsible or liable for damage . . . caused by any act or negligence of tenant;"[38] and a termination clause which provided that the tenant shall return the premises in good condition except for ordinary wear and tear and "*accidental fire not occurring through tenant's negligence*."[39]

*Deardorff* does not apply here. The court in *Deardorff* distinguished the *Lexington* decision by noting that, in the Deardorff lease, "there are two statements in the lease that the tenant is liable for fires it negligently causes."[40] The Seaford

---

[35] A-022 ("Tenant . . . shall . . . [n]ot bring anything to or keep anything in the rental unit . . . , or commit or allow to be committed any act objectionable to the fire or other hazard insurance companies for the landlord whereby the fire or other hazard insurance on the rental unit or any part thereof or on the building of which the rental unit is a part shall become void, suspend or rated as more hazardous substance or other obnoxious substances.").

[36] 1999 WL 458777 (Del. Super. May 6, 1999), *aff'd*, 781 A.2d 692 (Del. 2001).

[37] *Deardorff*, 1999 WL 458777, at *4.

[38] *Id.* at *3 (omissions in original).

[39] *Id.* (emphasis in original).

[40] *Id.*

Apartment lease did not specifically address liability for fire or water damage caused by the tenant's negligence.[41]

Finally, the Superior Court correctly observed that the policy considerations influencing the *Lexington* decision – recognizing the one-sided nature of residential leasing and protecting the parties' typical expectations regarding the assignment of risk of loss – are served by applying the *Sutton* rule in this case. Residential landlords control the lease terms. If they want, they can clearly express a requirement that the tenants obtain fire insurance or notify them that they would not benefit from the landlord's fire insurance policy.

III.

We affirm the Superior Court's judgment.

---

[41] Donegal argues that Paragraph 29 of the lease explicitly provides for the tenant's liability for damages *negligently* caused by the tenant. But Paragraph 29 reads that the tenant is liable for damages caused "accidentally, maliciously, intentionally, or negligently." A-020. This is not materially different from the provisions in *Deloach* and *Lambert*, which held the tenant responsible for property damage caused regardless of his mental state. *Deloach*, 2018 WL 5899080, at *1; *Lambert*, 2017 WL 5593784, at *1. To the extent that the lease here specifically mentions water damage in other provisions, Donegal failed to raise the argument below, and such arguments are waived.