661 So.2d 325 (1995)
CONTINENTAL INSURANCE COMPANY a/s/o Gulf National Life Insurance Company, Appellant,
v.
James R. KENNERSON, Individually, and Robert L. Higgins, Individually, and J & B Outlet, Inc., and James R. Kennerson and Robert L. Higgins d/b/a J & B Outlet, Inc., Appellees.
No. 94-611.
District Court of Appeal of Florida, First District.
September 22, 1995.
*326 Edwin A. Scales of Lane, Trohn, Clarke, Bertrand, Vreeland & Jacobsen, P.A., Lakeland, for Appellant.
John F. Fannin and J. Clark Hamilton, Jr., of Fannin, Tyler & Hamilton, P.A., Jacksonville, for Appellees.
BENTON, Judge.
As a shopping center owner's insurer, Continental Insurance Company (Continental) seeks reversal of summary judgment denying recovery it seeks from shopping center tenants for fire damage it attributes to the tenants' alleged negligence. The question is whether, when a landlord agrees to bear the expense of repairing fire damage and assumes responsibility for procuring fire insurance, while the tenant agrees to and does in fact bear "its pro rata share of all costs of fire ... insurance," the parties to the lease have allocated the risk of fire to the landlord's insurer, here Continental. The trial court concluded that J & B Outlet, Inc., like other shopping center tenants, should be viewed as "a beneficiary of the fire insurance policy obtained by the Lessor," who had contracted with Continental to assume the risk of fire damage, and granted summary judgment against Continental. We affirm.

Fire Risk Contemplated
In April of 1989, appellees (collectively J & B) executed a "shopping center store lease." B & R Limited (B & R), then owner of the shopping center, was lessor. Gulf National Life Insurance Company (Gulf) subsequently purchased the shopping center from B & R, assuming B & R's rights and succeeding to B & R's obligations under the lease J & B had executed. (While itself an insurance company, Gulf acted insofar as pertinent here only in its capacity as owner and lessor of the shopping center.) The lease includes the following provisions:
Fire Damage
11. If the demised premises shall be partially damaged by fire, the damages shall be repaired by and at the expense of Lessor and the rent until such repairs shall be made shall be apportioned according to the part of the demised premises which is usable by Lessee. No penalty shall accrue for reasonable delay which may arise by reason of adjustment of insurance on the part of Lessor and for reasonable delay on account of "labor troubles," or any other cause beyond Lessor's control.
By addendum to paragraph 15 of the lease, "Additional Rent," the parties further agreed:
Lessor will, during the term of this lease, maintain fire and extended coverage insurance on the demised premises for the benefit and protection of Lessor. However, Lessee shall pay, during the term of this lease, in addition to the rent elsewhere provided herein, as additional rent hereunder, its pro rata share of all costs of fire and extended coverage insurance for the shopping center. Such pro rata share shall be in the same proportion as the total number of square feet of floor space in the demised premises bears to the total number of square feet of floor space in all buildings in the shopping center. Lessee shall pay the costs described herein within twenty (20) days of being billed therefor. Nothing herein contained shall obligate the *327 Lessor to maintain fire and extended coverage on any improvements, equipment, merchandise, or other personal property of Lessee in the demised premises and it shall be the responsibility of Lessee to provide Lessee's own insurance on such items.
As agreed, Gulf used money furnished by J & B (among other tenants) to purchase fire insurance from Continental.
Originating in a storeroom leased to J & B, fire broke out on January 22, 1990, and damaged the shopping center. Continental paid Gulf $235,114.52 under the insurance policy for losses Gulf sustained on account of the fire. As Gulf's subrogee, Continental then brought the present lawsuit, alleging that J & B's negligence caused the fire. Without reaching the negligence question, the trial court granted summary judgment against Continental on the ground that the lease had the effect of placing the risk of fire loss on Continental, as Gulf's and J & B's insurer.

Subrogation Unavailable Against Insured
In general, an insurance company is entitled to step into the shoes of an insured it has compensated for a loss and sue any party whom the compensated insured could have sued for causing the loss. But "an insurance company cannot maintain a subrogation action against its own insured." Insurance Co. of North America v. Nezelek, 480 So.2d 1333, 1335 (Fla. 4th DCA 1985), review denied, 491 So.2d 279 (Fla. 1986). Where "the obvious intent of the parties [to a lease] was to shift the risk of damages caused by fire to an insurer ... [the lessee] qualifies as an intended beneficiary under the insurance policy." U.S. Fire Ins. Co. v. Norlin Indus., Inc., 428 So.2d 325, 326 (Fla. 1st DCA 1983).
It is well established that parties to a contract may mutually agree that one party will obtain insurance as part of the bargain, to shift the risk of loss from both of them to the insurance carrier. If loss occurs, they are deemed to have agreed to look solely to the insurance, without regard to which party was negligent, and subrogation is not allowed. Housing Investment Corp. v. Carris, 389 So.2d 689 (Fla. 5th DCA 1980); Smith v. Ryan, 142 So.2d 139 (Fla. 2d DCA 1962).
Fairchild v. W.O. Taylor Commercial Refrigeration and Elec. Co., 403 So.2d 1119, 1120 (Fla. 5th DCA 1981). Accord, City of Deland v. Dri-Clime Lamp Corp., 348 So.2d 1239 (Fla. 1st DCA 1977); Smith v. Ryan, 142 So.2d 139 (Fla. 2d DCA 1962). The decision in Tout v. Hartford Accident and Indem. Co., 390 So.2d 155 (Fla. 3d DCA 1980) is not to the contrary.[1]
Continental cites paragraph 10 of the lease, "Indemnity and Liability Insurance," as a reason to conclude that the insurance *328 contemplated by the addendum to paragraph 15 was not intended for the benefit of lessees. Paragraph 10 reads, in part:
Lessee will, during the term of this lease, at its own cost and expense, maintain and provide general liability insurance for the benefit of and protection of Lessor and Lessee (said policy to name Lessor as a co-insured), in an amount not less than $200,000.00 for injuries to any one person, and not less than $500,000.00 for injuries to more than one person and for damages to property in an amount not less than $50,000.00 arising out of any one accident or occurrence. Said policy shall cover the demised premises, the sidewalks adjoining same and the other areas of the shopping center used by Lessee. The public liability policy or a certificate thereof shall be delivered to Lessor at the commencement of the term, together with proof of payment of premium and renewals not less than twenty (20) days before its expiration date. Said policy and/or certificate shall contain an undertaking by the insurer to give Lessor not less than ten (10) days' written notice of any cancellation or change in scope or amount of coverage of such policy. If Lessee fails to comply with this requirement, Lessor may obtain such insurance and keep same in effect and Lessee shall pay Lessor the cost thereof upon demand as additional rent.
In this paragraph, the lease specifies that general liability insurance[2] is to be procured for the benefit of both parties to the lease, and that they are to be named as co-insureds.

Fire Risk Shifted To Insurer
While this provision contrasts with the addendum to paragraph 15, which states that fire insurance is to be procured for the lessor's benefit and protection, the parties' complete agreement regarding possible fire damage can only be understood properly if the addendum is read together with paragraph 11, which provides that damage caused by fire "shall be repaired by and at the expense of Lessor." The parties agreed that, in the event of fire, J & B would be excused even from paying rent for damaged premises while the lessor applied insurance proceeds (under the policy J & B was billed for) to effect repairs.
The lease gives J & B notice that it is responsible for procuring fire insurance for "improvements, equipment, merchandise, or other personal property of Lessee." We reject Continental's contention that the lease imposed on J & B sub silentio the additional responsibility to procure a second policy of fire insurance covering the landlord's property it was already paying to insure. See United Fire & Casualty Co. v. Bruggeman, 505 N.W.2d 87, 89 (Minn. Ct. App. 1993); Rock Springs Realty, Inc. v. Waid, 392 S.W.2d 270, 278 (Mo. 1965); Sutton v. Jondahl, 532 P.2d 478, 482 (Okla. Ct. App. 1975); Rizzuto v. Morris, 22 Wash. App. 951, 592 P.2d 688, 690 (1979). The parties plainly agreed to shift the risk of fire damage to an insurance company.
The present case resembles the Dri-Clime Lamp case, which arose in the wake of a fire *329 on premises leased by the City of Deland to Keller Kitchen Cabinets, Inc. (Keller). Under the lease, "the landlord was obligated to rebuild the premises to the extent of the insurance coverage if ... damaged or destroyed by fire." Dri-Clime Lamp, 348 So.2d at 1240. The lease required Keller to procure fire insurance "in such amounts as shall be approved by the Landlord ... for the mutual benefit of Landlord and Tenant." Id. In accordance with this provision, Keller had procured and the City had approved fire insurance in the amount of $100,000. After a fire caused damage to the building in the amount of $150,000, the City sought to recover the entire amount from the lessee and its insurer (among others).
Marshalling authorities from other jurisdictions, the Dri-Clime Lamp court held that the City could not sue its lessee for negligence and that its recovery was limited, by virtue of the terms of the lease, to the insurance proceeds, even though the lease expressly provided that the tenant would be liable for "any damages sustained by landlord resulting from the negligence of the tenant," id., and damages exceeded the policy amount. Id. at 1241-42. Accord, Alaska Ins. Co. v. RCA Alaska Communications, Inc., 623 P.2d 1216 (Alaska 1981).
The lease in the present case has no provision making J & B liable for damages its negligence might cause. The Dri-Clime Lamp opinion quotes with approval language from Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co., 59 Cal. App.3d 860, 131 Cal. Rptr. 211 (1976):
It is quite obvious from these provisions that the parties to the lease and the sublease all intended that the proceeds of Liberty's fire insurance policy, maintained by the lessee at (sublessee's) expense, were to constitute the protection of all parties to the lease documents against fire loss to the extent of the policy limits... .
If subrogation were permitted here, (sublessee) rather than the proceeds of Liberty's policy, would become the source of the funds used to repair the fire damage ... and it would be most inequitable to hold (sublessee) responsible for a fire loss which it thought it had completely avoided through its indirect payment over some nine years of the premiums due on Liberty's policy and had also acted in reliance upon this belief by failing to take out corresponding fire insurance of its own. It would also be a windfall for Liberty to have collected these premiums over the years for its assumption of this risk and then when the risk actually occurred, by means of this litigation, to transfer the risk wholly to (sublessee)  the entity which paid Liberty's premium for years to avoid this very risk.
Dri-Clime Lamp, 348 So.2d at 1241. In the Dri-Clime Lamp case a single (sub)lessee paid insurance premiums directly to the insurance company while here the lessor collected money earmarked for the premiums from several tenants, then paid the insurance premiums itself. In that respect, the present case resembles more closely the California case on which the Dri-Clime Lamp court relied. But in all three cases, the economics and the equities are the same.
Courts look to the substance of such risk-allocating agreements. The court took such an approach in Smith v. Ryan, where a homeowner had hired Ryan to install an air conditioning system. The contract called for Ryan to bear the expense of "any cost" his negligence might occasion, Ryan, 142 So.2d at 140, but it also provided that Smith, the homeowner, would procure fire insurance for the "entire structure on which the work of this contract is to be done, ... including items of labor and materials connected therewith," and requiring that Ryan be designated a co-insured. Id. at 141.
While work was in progress, a fire started in the air conditioning unit, damaging the unit and the residence. Smith, the homeowner, was insured against fire, but she had never obtained a policy on which Ryan was designated a co-insured. After paying her claim, her insurance company sued Ryan, alleging that the fire was caused by Ryan's negligent installation of the air conditioning unit. The Ryan court acknowledged the principle that a contract will not be construed to protect a party against its own negligence unless the contract clearly provides for such *330 protection.[3] But it held that the "obvious purpose" of the provision that Ryan be named a co-insured on the fire policy "was to prevent ... a subro[]gation suit. The contract contemplated the shifting of any risk ... from damage by fire to an insurer, irrespective of negligence." Id.
There was no contractual provision denominating the parties co-insureds or specifying that insurance was to be for the mutual benefit of both parties in Housing Investment Corp. v. Carris, where the court held that a plumber's contract which required only that the owner of the structure "carry fire, tornado, and other necessary insurance," doomed the insurer's attempt to recover as the owner's subrogee for fire damage caused by the plumber's negligence. Carris, 389 So.2d at 690. Relying on Smith v. Ryan, despite the contractual provision in that case requiring that Ryan be named a co-insured, the court said:
We perceive no meaningful difference in the intent of the contracting parties in either case. In both cases the parties foresaw the possibility of loss by fire arising from the construction work and in both cases the contract provision was for the purpose of providing protection from that risk by use of insurance.
Id. at 689-90. The contracting parties in the present case also foresaw the possibility of loss by fire and "provid[ed] protection from that risk by use of insurance." Like the Carris court, we perceive no meaningful difference between the intent of the parties in that case and the intent of the parties in Ryan and Dri-Clime Lamp. The fire insurance lease provisions involved in the present case embody the selfsame intent.

Conclusion
We conclude that a landlord's insurer cannot exercise any right of subrogation against a merely negligent tenant to recover money paid the landlord under a fire insurance policy, where the landlord has agreed to bear the expense of repairing fire damage and has assumed responsibility for procuring fire insurance, the cost of which the tenant has agreed to bear and has in fact borne. This is clearly in keeping with the
modern trend of authority [which] holds that the lessor's insurer cannot obtain subrogation against the lessee in the absence of an express agreement or lease provision establishing the lessee's liability, because the lessee is considered a co-insured of lessor for the purpose of preventing subrogation; the parties are co-insureds because of the reasonable expectations they derived from their privity under the lease, their insurable interests in the property, and the commercial realities under which lessors insure leased premises and pass on the premium cost in rent and under which insurers make reimbursement for fires negligently caused by their insureds' negligence.
6A John A. Appleman & Jean Appleman, Insurance Law and Practice, § 4055 at 77-78 (Supp. 1994). See e.g., Alaska Ins. Co. v. RCA Alaska Communications, Inc., 623 P.2d 1216 (Alaska 1981); Parsons Mfg. Corp. v. Superior Court, 156 Cal. App.3d 1151, 203 Cal. Rptr. 419 (1984); Tuxedo Plumbing & Heating Co., Inc. v. Lie-Nielsen, 245 Ga. 27, 262 S.E.2d 794 (1980); Safeco Ins. Companies v. Weisgerber, 115 Idaho 428, 767 P.2d 271 (1989); Cerny-Pickas & Co. v. C.R. Jahn *331 Co., 7 Ill.2d 393, 131 N.E.2d 100 (1955); McGinnis, ex rel. C.I.E. Serv. Corp. v. LaShelle, 166 Ill. App.3d 131, 116 Ill.Dec. 631, 519 N.E.2d 699 (1988); New Hampshire Ins. Group v. Labombard, 155 Mich. App. 369, 399 N.W.2d 527 (1986); United Fire & Casualty Co. v. Bruggeman, 505 N.W.2d 87 (Minn. Ct. App. 1993); Rock Springs Realty, Inc. v. Waid, 392 S.W.2d 270 (Mo. 1965); Safeco Ins. Co. v. Capri, 101 Nev. 429, 705 P.2d 659 (1985); Community Credit Union of New Rockford, N.D. v. Homelvig, 487 N.W.2d 602 (N.D. 1992); U.S. Fire Ins. Co. v. Phil-Mar Corp., 166 Ohio St. 85, 139 N.E.2d 330 (1956); Sutton v. Jondahl, 532 P.2d 478 (Okla. Ct. App. 1975); Tate v. Trialco Scrap, Inc., 745 F. Supp. 458 (M.D.Tenn. 1989) (decided under Tennessee law), aff'd, 908 F.2d 974 (6th Cir.1990); Fashion Place Inv., Ltd. v. Salt Lake County, 776 P.2d 941 (Utah Ct.App. 1989); Monterey Corp. v. Hart, 216 Va. 843, 224 S.E.2d 142 (1976); Cascade Trailer Court v. Beeson, 50 Wash. App. 678, 749 P.2d 761 (1988).
Affirmed.
MINER, J., concurs.
WEBSTER, J., concurs in result only.
NOTES
[1] In Tout, a lessee(-purchaser) negligently caused fire damage. The lessor recovered from its insurer, who then proceeded as subrogee against the lessee. The lease stated: "Seller assumes risk of loss from fire or otherwise until closing." Id. at 155. The Tout court held that this "exculpatory clause" in the lease did not defeat the insurer's subrogation rights, because it did not expressly relieve the lessee of liability for its own negligence. Id. at 156. But the Tout court made no mention of any contractual provision pertaining to insurance. It did not address the significance of a provision shifting the contracting parties' risk of fire loss to an insurer. Contrast Carris, 389 So.2d at 690 (only reasonable purpose for insurance provision in the construction contract was to exculpate contractor from liability for loss).

The decision in Tout represents a minority view. The majority view has been traced to Sutton v. Jondahl, 532 P.2d 478 (Okla. Ct. App. 1975), where the court held that a tenant should be deemed a landlord's co-insured in the absence of a lease provision to the contrary.
Nine other jurisdictions have followed the Oklahoma Court of Appeals decision in Sutton. See Alaska Ins. Co. v. RCA Alaska Communications, Inc., 623 P.2d 1216 (Alaska 1981); Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co., 59 Cal. App.3d 860, 131 Cal. Rptr. 211 (1976); Safeco Ins. Co. v. Weisgerber, 115 Idaho 428, 767 P.2d 271 (1989); New Hampshire Ins. Group v. Labombard, 155 Mich. App. 369, 399 N.W.2d 527 (1986); Reeder v. Reeder, 217 Neb. 120, 348 N.W.2d 832 (1984); Safeco Ins. Co. v. Capri, 101 Nev. 429, 705 P.2d 659 (1985); Fashion Place Invs., Ltd. v. Salt Lake County Mental Health, 776 P.2d 941 (Utah App. 1989); Monterey Corp. v. Hart, 216 Va. 843, 224 S.E.2d 142 (1976); Cascade Trailer Court v. Beeson, 50 Wash. App. 678, 749 P.2d 761 (1988).
Neubauer v. Hostetter, 485 N.W.2d 87, 88 (Iowa 1992) (footnote omitted.) (adopting minority views).
[2] This provision parallels paragraph 10 of the lease at issue in U.S. Fire Ins. Co. v. Norlin Indus., Inc., 428 So.2d 325 (Fla. 1st DCA 1983), which the court described in part:

Paragraph 7 of the lease provides that the lessor agrees to maintain fire insurance on the building. Paragraph 11 provides for options on the part of the lessor and lessee in the event of fire damage. Paragraph 10 reads:
The lessee agrees to indemnify the lessor from any damage to the property or that may be sustained by individuals as the result of injuries on the premises due to the negligence of the lessee. The lessee further agrees to carry liability insurance with minimum limits of $100,000 per person, $300,000 per accident with the said lessor being named as a co-insured on the policy.
Id. at 325-26. Rejecting an insurer's subrogation claim, the court held:
[T]he obvious intent of the parties was to shift the risk of damages caused by fire to an insurer. Paragraph 10 of their contract does not defeat that intent. It merely constitutes an additional protection for the lessor that would apply in certain circumstances not at issue here. Therefore, since appellee qualifies as an intended beneficiary under the insurance policy, the trial judge was correct in dismissing appellant's subrogation suit against its own insured.
Id. at 326. Here, as in Norlin, the lessee's agreement to carry general liability insurance "constitutes additional protection that would apply in circumstances [involving liability to injured third parties] not at issue here."
[3] Continental cites Fairchild v. W.O. Taylor Commercial Refrigeration and Elec. Co., 403 So.2d 1119, 1120 (Fla. 5th DCA 1981). Fairchild, like Carris, involved fire damage a contractor's negligence had negligently caused a residence. In both cases, a contractual provision required the owner to provide "fire, tornado, and other necessary insurance." The Fairchild court permitted the homeowner's insurer to proceed on a subrogation theory against the contractor. In Fairchild, the fire allegedly caused by the contractor's negligence occurred some five years after the contractor's work had been completed. Not surprisingly, the court concluded that the "normal and reasonable interpretation" of the insurance provision in the contract was "that the parties intended to cover that period of time during which both ha[d] an insurable interest in the structure and equipment." Id. at 1121. The court said, "The parties could bargain for and shift the risk of loss as part of the construction contract[,] [b]ut after the contract was performed ... the duty of the owner to insure for Taylor's benefit was ... completed." Id. The court held that the insurance provision "if intended by Taylor as a perpetual exculpation of liability for his negligence ... was so obscure and indefinite as to be unenforceable." Id. The contract at issue here contains no purported "perpetual exculpation of liability."