COHEN, J.
 

 The issue in this appeal is whether Underwriters of Lloyds of London (hereafter “Lloyds”) is precluded from bringing a subrogation action because Cape Publications, Inc.’s commercial lease evidenced an intent that it be considered a beneficiary or co-insured under the property and casualty insurance policy maintained by Harry and Wendy Brandon (hereafter “Bran-dons”). We review the issue de novo and affirm.
 
 See Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126 (Fla.2000).
 

 Cape Publications leased commercial office space in a building owned by the Bran-dons. The Brandons insured the building with a property and casualty insurance policy, covering fire damage, purchased from Lloyds. As expressly provided in the lease, a portion of Cape Publications’ monthly rent was allocated to paying its pro rata share of the premiums on the Brandons’ property and casualty insurance. The lease also required Cape Publications to obtain a general liability insurance policy, naming the Brandons as co-insureds, “in an amount not less than $1,000,000 combined single limit for personal injury[,] bodily injury and property damage....” Cape Publications further agreed to indemnify and hold the Bran-dons harmless for any claim of damage or injury arising out of its negligence or use of the premises.
 

 The Brandons subsequently submitted a claim to Lloyds after part of the premises leased by Cape Publications was damaged by fire.
 
 [1]
 
 Lloyds paid the Brandons’ claim and, pursuant to the lease’s indemnity and hold harmless provision, demanded Cape Publications indemnify it for the loss. When Cape Publications refused, Lloyds filed suit, asserting claims for breach of contract, contractual indemnity, and common law indemnity. Cape Publications moved for summary judgment arguing that its pro rata payment of the premiums, along with other lease provisions, made it a co-insured under the Brandons’ property and casualty policy and, therefore, Lloyds could not maintain a subrogation action against its own insured. The trial court agreed and granted summary final judgment in favor of Cape Publications, citing
 
 Continental Insurance Co. v. Kennerson,
 
 661 So.2d 325 (Fla. 1st DCA1995).
 

 Lloyds argues the summary final judgment was improvidently granted because the lease reflects the parties’ intent to shift the risk of loss for fire damage to Cape Publications. Thus, Cape Publications cannot be considered a co-insured or intended beneficiary under the Brandons’ property and casualty insurance policy.
 
 *894
 
 Lloyds points to two lease provisions in support: the provision requiring Cape Publications to purchase a general liability policy naming the Brandons co-insureds, and the indemnity and hold harmless provision.
 

 The issue raised in this appeal has been addressed in numerous decisions across the country, in the context of both residential and commercial leases. In deciding the issue, courts have adopted one of three analytical approaches: the Sutton,
 
 [2]
 
 anti-
 
 Sutton,
 
 or case-by-case approach. Whether one approach is adopted over another is motivated by the public policy considerations underlying each. Before determining which approach this court will adopt, a brief overview is necessary.
 

 Generally recognized as representing the majority position or “modern” trend
 
 [3]
 
 is
 
 Sutton v. Jondahl,
 
 532 P.2d 478 (Okla.Ct.App.1975). In
 
 Sutton,
 
 582 P.2d at 479, the residential landlord’s insurer filed a subrogation action to recover the monies paid to the landlord for damage caused by an accidental fire started by the tenant’s son. The court held that the landlord’s insurer could not maintain a subrogation action against the negligent tenant because the “law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary.”
 
 Id.
 
 at 482.
 

 This conclusion was based on several legal and practical considerations and assumptions. First, the court recognized the “relational reality” that both the landlord and tenant had insurable interests: one with a fee interest and the other a posses-sory interest.
 
 Id.
 
 Second, the court assumed that the landlord passed the cost of the insurance premium onto the tenant as part of the rent payment.
 
 Id.
 
 Third, the court stated that a reality of residential renting was “[prospective tenants ordinarily rely” on the owner to procure fire insurance and, absent an agreement otherwise, “it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit....”
 
 Id.
 

 Although a number of courts have adopted
 
 Sutton
 
 in toto,
 
 [4]
 
 others have adopted its holding but advanced alternative rationales. In
 
 Tri-Par Investments, LLC v. Sousa,
 
 268 Neb. 119, 680 N.W.2d 190, 199 (2004), the court reasoned that a “pure
 
 Sutton
 
 approach” provided legal certainty by preventing “landlords from engaging in gamesmanship when drafting leases by providing the necessary incentive for them, if they so desire, to place express subrogation provisions in their leases.” Absent such a provision, the court reasoned that insurers would pass the increased risk to the landlords in the form of higher premiums, and the landlords would increase the rent to reflect the higher premiums. The court stated: “This is almost certainly the current commercial reality.”
 
 Id.
 

 In
 
 DiLullo v. Joseph,
 
 259 Conn. 847, 792 A.2d 819, 822 (2002), the court concluded that
 
 Sutton
 
 represented better policy based on the “strong public policy” against
 
 *895
 
 economic waste. The court stated that to hold otherwise
 

 would create a strong incentive for every tenant to carry liability insurance in an amount necessary to compensate for the value, or perhaps even the replacement cost, of the entire building, irrespective of the portion of the building occupied by the tenant. That is precisely the same value or replacement cost insured by the landlord under his fire insurance policy. Thus, although the two forms of insurance would be different, the economic interest insured would be the same. This duplication of insurance would, in our view, constitute economic waste and, in a multiunit building, the waste would be compounded by the number of tenants.
 

 Id.
 
 at 822-23.
 

 In addition to recognizing the rationales in
 
 Sousa
 
 and
 
 DiLullo,
 
 the court in
 
 Dattel Family Limited Partnership v. Wintz,
 
 250 S.W.3d 883 (Tenn.Ct.App.2007), added that the
 
 Sutton
 
 approach comported with the reasonable expectations of the parties. Specifically, the court reasoned that a residential tenant who merely has a possesso-ry interest would expect the landlord to obtain insurance on the entire building. Conversely, a reasonable landlord would not expect each individual tenant to purchase insurance covering the landlord’s building. Accordingly, “all parties involved would reasonably expect a residential tenant to be considered a co-insured under the landlord’s insurance policy unless the parties had expressly agreed otherwise.”
 
 Id.
 
 at 892.
 

 Reaching the opposite conclusion are the
 
 anti-Sutton
 
 courts. These courts hold that the landlord’s insurer may maintain a sub-rogation action against a negligent tenant who causes fire damage, unless the parties expressly or impliedly agree to the contrary.
 
 See Page v. Scott,
 
 263 Ark. 684, 567 S.W.2d 101 (1978);
 
 Neubauer v. Hostetter,
 
 485 N.W.2d 87 (Iowa 1992);
 
 Britton v. Wooten,
 
 817 S.W.2d 443 (Ky.1991);
 
 Fire Ins. Exchange v. Geekie,
 
 179 Ill.App.3d 679, 128 Ill.Dec. 616, 534 N.E.2d 1061 (1989);
 
 Zoppi v. Traurig,
 
 251 N.J.Super. 283, 598 A.2d 19 (1990). These cases reject the assumptions and rationale underlying
 
 Sutton
 
 and adhere to the maxim that a party cannot escape liability for his negligence unless expressly disclaimed in the contract.
 

 The case-by-case approach eschews presumptions that a tenant is or is not a co-insured of the landlord. Instead, the court examines the lease as a whole to determine the parties’ reasonable expectations as to who should bear the risk of loss when a tenant negligently damages the leased premises.
 
 See Am. Family Mut. Ins. Co. v. Auto-Owners Ins. Co.,
 
 757 N.W.2d 584 (S.D.2008);
 
 Rausch v. Allstate Ins. Co.,
 
 388 Md. 690, 882 A.2d 801 (2005);
 
 Union Mut. Fire Ins. Co. v. Joerg,
 
 175 Vt. 196, 824 A.2d 586 (2003). This approach not only adheres to basic contract analysis, but avoids “making assumptions and adopting fictions that are largely conjectural, if not patently illogical.... ”
 
 Rausch,
 
 882 A.2d at 814. As its name suggests, the determination is made on a case-by-case basis and “subrogation may be denied ... if the lease expressly requires the landlord to maintain fire insurance or the lease exonerates a tenant from losses caused by a fire.”
 
 Am. Family Mut. Ins. Co.,
 
 757 N.W.2d at 594.
 

 Although each approach is supported by persuasive policy rationales, this court concludes that the parties are in the best position to allocate the risk of loss for fire damage
 
 [5]
 
 and, therefore, adopt the
 
 *896
 
 case-by-case approach.
 
 [6]
 
 Applying this approach to the commercial lease in this case, we agree with Lloyds that the general provisions requiring Cape Publications to obtain general liability insurance and indemnify and hold the Brandons harmless for its negligence are relevant to determining which party bears the risk of loss. These provisions, however, are not disposi-tive.
 

 The lease expressly provides that the Brandons would purchase a property and casualty insurance policy, which undisput-edly covered fire damage on the commercial building. The parties further agreed that Cape Publications’ rent included its pro rata share of the premium. These specific provisions not only control over the general provisions Lloyds cites, but plainly indicate that the parties intended the risk of loss be born by the Brandons’ insurer: Lloyds.
 
 See Colonial Bank, N.A. v. Taylor Morrison Servs., Inc.,
 
 10 So.Bd 653, 655 (Fla. 5th DCA 2009) (when two contract provisions address the same subject, the specific controls over the general). This same conclusion was reached in
 
 Ken-nerson,
 
 661 So.2d at 330, when the court held an insurer could not maintain a subro-gation action against a commercial tenant where the landlord “assumed responsibility for procuring fire insurance, the cost of which the tenant has agreed to bear and has in fact borne.”
 
 See also Rausch,
 
 882 A.2d at 816 (when the landlord expressly or impliedly agrees to maintain fire insurance on the property, “absent some compelling provision to the contrary,” a court can conclude the parties reasonably expected the landlord would only look to the policy, not the tenant, for a fire loss covered by the policy, notwithstanding a general provision requiring the tenant to surrender the premises in good condition or one imposing liability for the tenant’s negligence).
 

 Based on the foregoing, we conclude that the parties intended Cape Publications to be an intended beneficiary or co-insured under the Brandons’ property and casualty insurance policy.
 
 [7]
 
 Accordingly, Lloyds may not maintain its subrogation action against Cape Publications and the trial court properly entered summary final judgment in its favor.
 

 AFFIRMED.
 

 ORFINGER, J., and LAMBERT, B., Associate Judge, concur.
 

 [1]
 

 . The fire was apparently the result of improper electrical cords used for vending machines that were owned and operated by a third party, but installed at Cape Publications’ direction.
 

 [2]
 

 .
 
 Sutton v. Jondahl,
 
 532 P.2d 478 (Okla.Ct.App.1975).
 

 [3]
 

 .
 
 See Tri-Par Invs., L.L.C. v. Sousa,
 
 268 Neb. 119, 680 N.W.2d 190, 195 (2004);
 
 Dattel Family Ltd. P'ship,
 
 250 S.W.3d 883, 888 (Tenn.Ct.App.2007);
 
 Tate v. Trialco Scrap, Inc.,
 
 745 F.Supp. 458, 467 (M.D.Tenn.1989).
 

 [4]
 

 .See Cambridge Mut. Fire Ins. Co. v. Crete,
 
 150 N.H. 673, 846 A.2d 521 (2004);
 
 Peterson v. Silva,
 
 428 Mass. 751, 704 N.E.2d 1163 (1999);
 
 Safeco Ins. Co. v. Capri,
 
 101 Nev. 429, 705 P.2d 659 (1985);
 
 Lexington Ins. Co. v. Raboin,
 
 712 A.2d 1011 (Del.Super.Ct.1998).
 

 [5]
 

 . Given the commercial nature of the lease in this case, we presume that the parties had
 
 *896
 
 equal bargaining power.
 

 [6]
 

 . The courts in
 
 Continental Insurance Co. v. Kennerson,
 
 661 So.2d 325 (Fla. 1st DCA 1995), and
 
 State Fann Florida Insurance Co. v. Loo,
 
 27 So.3d 747 (Fla. 3d DCA 2010), have previously addressed this issue. However, at least between these parties, there appears to be some confusion surrounding which approach they adopted. Our analysis of these cases leads us to conclude that
 
 Kennerson
 
 adopted the case-by-case approach, notwithstanding its citation to
 
 Sutton v. Jondahl,
 
 532 P.2d 478 (Okla.Ct.App.1975). It appears, however, that
 
 Loo
 
 adopted the anti-Sniion approach, notwithstanding its statement that it adopted and applied the case-by-case approach. We need not address, nor resolve, whether such a conflict exists.
 

 [7]
 

 . We note that the same conclusion would result under the
 
 anti-Sutton
 
 approach because the parties' agreement to shift the risk of loss to an insurer may be implied "when the terms of the lease require the landlord to carry insurance at the expense of the tenant.
 
 Page v. Scott,
 
 263 Ark. 684, 567 S.W.2d 101, 103 (1978).