# Third District Court of Appeal

## State of Florida

Opinion filed February 6, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-0690
Lower Tribunal No. 16-6142
_____

## Zurich American Insurance Company, a/s/o Lincoln-Drexel Waserstein, Ltd. and Lincoln Drexel, Ltd.,
Appellant,

vs.

## Puccini, LLC d/b/a 5 Napkin Burger,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Bronwyn C. Miller, Judge.

Derrevere Stevens Black and Cozad, and Jon D. Derrevere, and Michael B. Stevens, and Shirley Jean McEachern and Mary Grecz (West Palm Beach), for appellant.

Hamilton, Miller & Birthisel, LLP, and Michelle A. Delancy and Melanie Grant, for appellee.

Before EMAS, C.J., and LOGUE and LINDSEY, JJ.

LINDSEY, J.

Appellant Zurich American Insurance Company ("Zurich"), as subrogee of Lincoln-Drexel Waserstein, Ltd. and Lincoln Drexel, Ltd. ("Landlord"), appeals the trial court's final order dismissing, with prejudice, all of its claims against Appellee Puccini, LLC. d/b/a 5 Napkin Burger ("Tenant"). Because we find, based on the written lease agreement as a whole, that Tenant was not an implied co-insured with Landlord for subrogation purposes, we reverse.

## BACKGROUND

This subrogation action arises from Zurich's attempt to recover money from Tenant that Zurich paid to Landlord for fire damage sustained to Landlord's building. Tenant leased space from Landlord for a restaurant pursuant to a written lease agreement dated March 1, 2010, for a term of fifteen years and ten months. On February 7, 2015, a fire ignited in Tenant's kitchen followed by another fire on the roof of the building. At the time of the fire, Landlord had a Zurich insurance policy that covered a portion of the damage. Pursuant to the terms of its policy, Zurich alleged that it paid Landlord over $2.1 million dollars and that, as a result, Zurich became subrogated to all of Landlord's claims against Tenant up to that amount.

Tenant moved to dismiss Zurich's subrogation action, asserting that Tenant was an implied co-insured under the policy. The trial court ultimately agreed and entered a written order finding, based on various provisions of the lease, that Tenant

2

was an implied co-insured and concluding, as a matter of law, that Zurich was barred from proceeding with a subrogation action against Tenant. The trial court then entered a final order dismissing Zurich's claims against Tenant with prejudice and without leave to amend. This timely appeal follows.

## I.   STANDARD OF REVIEW

We review a trial court's order granting a motion to dismiss *de novo*. Grove Isle Ass'n v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1089 (Fla. 3d DCA 2014) (citations omitted). "In determining the merits of a motion to dismiss, the trial court must limit itself to the four corners of the complaint, including any attached or incorporated exhibits, assuming the allegations in the complaint to be true and construing all reasonable inferences therefrom in favor of the non-moving party." Id. (citations omitted).

Moreover, the interpretation of a lease agreement is a question of law, and the applicable standard of review is *de novo*. Leisure Resorts, Inc. v. City of West Palm Beach, 864 So. 2d 1163, 1166 (Fla. 4th DCA 2003) (citation omitted). In undertaking review of a lease, an appellate court is permitted to reassess the contract and reach a different interpretation from that of the trial court. Sugar Cane Growers Coop. of Fla. v. Pinnock, 735 So. 2d 530, 534 (Fla. 4th DCA 1999). The contract should be reviewed as a whole and all language given effect, and where the language is clear and unambiguous, the contract should be enforced as it reads. Id.

3

## II. ANALYSIS

At issue in this case is the concept of insurance by implication as it relates to an insurer's ability to maintain a subrogation action against a tenant who is not named in the insurance policy. "Generally, when an insurer pays the claim of its insured, the insurer stands in the shoes of its insured, and the insurer may bring a subrogation action against the tortfeasor to recover the amounts paid under the insurance policy." State Farm Fla. Ins. Co. v. Loo, 27 So. 3d 747, 748 (Fla. 3d DCA 2010). However, an insurer may not maintain a subrogation action against its own insured, even if the insured's negligence caused the loss. Id. In the landlord/tenant context, when a tenant is found to be an implied co-insured with its landlord, the landlord's insurer is barred from bringing an action against the tenant in subrogation. Here, Zurich seeks to stand in the shoes of its insured, Landlord, to sue Tenant for any damage to the building that may have been caused by Tenant's agents or employees.

In determining whether a landlord's insurer may pursue a subrogation action against a negligent tenant, courts have typically adopted one of three views: (1) the approach set forth in Sutton v. Jondahl, 532 P.2d 478 (Okla. Civ. App. 1975), which establishes that a tenant is a coinsured of the landlord—and therefore subrogation is unavailable—absent an express agreement to the contrary; (2) the "anti-Sutton approach," which provides a presumption in favor of subrogation and permits an

4

insurer to bring a subrogation action against the tenant absent an express or implied agreement to the contrary; and (3) the "case-by-case approach." Loo, 27 So. 3d at 749; see also Am. Family Mut. Ins. Co. v. Auto-Owners Ins. Co., 757 N.W.2d 584, 589-94 (S.D. 2008).

In the case-by-case approach, there is no presumption in favor of or against subrogation; rather, "the 'lease as a whole' is examined 'in order to ascertain the intent of the parties as to who should bear the risk of loss for damage to the leased premises caused by the tenant's negligence.'" Loo, 27 So. 3d at 750 (quoting Am. Family, 757 N.W.2d at 592). This Court, along with some of our sister courts, has adopted the case-by-case approach.[1] Id. at 750-51; see also Underwriters of Lloyds of London v. Cape Publ'ns, Inc., 63 So. 3d 892, 895-96 (Fla. 5th DCA 2011) ("Although each approach is supported by persuasive policy rationales, this court

---

[1] According to the dissent, our case-by-case approach departs from the majority view, which is the anti-subrogation approach from Sutton. But see Rausch v. Allstate Ins. Co., 882 A.2d 801, 814 (Md. 2005) ("The majority of courts, however, have avoided per se rules and taken a more flexible case-by-case approach, holding that a tenant's liability to the landlord's insurer for negligence causing a fire depends on the intent and reasonable expectations of the parties to the lease as ascertained from the lease as a whole." (quoting Union Mut. Fire Ins. Co. v. Joerg, 824 A.2d 586 (Vt. 2003))). We are, however, bound by our prior cases to follow the case-by-case approach. Moreover, as articulated by other courts, "[w]e are not particularly impressed with characterizations of a doctrine as the 'majority' or 'minority'. We will give due consideration to all decisions of other jurisdictions but will be persuaded only by the soundness of their reasoning and their consistency with [our State's] law." Am. Family, 757 N.W.2d at 594 (alterations in original) (quoting Koch v. Spann, 92 P.3d 146, 150 n.2 (Or. Ct. App. 2004)).

5

concludes that the parties are in the best position to allocate the risk of loss for fire damage and, therefore, adopt the case-by-case approach." (footnote omitted)); Cont'l Ins. Co. v. Kennerson, 661 So. 2d 325, 326-30 (Fla. 1st DCA 1995) (examining several lease provisions to determine the parties' intent as to who should bear the risk of loss for damage caused by tenants' negligence).

In Loo, the landlord maintained an insurance policy on a rental dwelling unit it leased to a tenant. 27 So. 3d at 748. During the rental period, a fire occurred at the premises, and the insurer paid the landlord for the losses. Id. The insurer filed a subrogation action against the tenant to recover the amounts paid to the landlord, alleging that the tenant's negligence caused the fire. Id. The trial court applied the Sutton doctrine, under which a tenant is an implied co-insured under a landlord's policy unless there is an express agreement between the landlord and the tenant to the contrary. Id. at 748, 753. Because there was no such express agreement, the trial court granted summary judgement in favor of the tenant, finding it was an implied co-insured and barring the insurer from suing the tenant in subrogation for damages caused by the tenant's negligence. Id. at 748.

This Court reversed, determining that the trial court applied the incorrect legal standard and instead examined "the terms of the parties' lease to determine if, as a matter of law, the parties intended that the tenant would not be held liable for her negligent acts that damaged the leased premises." Id. at 751. In Loo, the lease

6

provided that the landlord would repair the premises if damaged by fire "not due to lessee's negligence" and prohibited the tenant from keeping materials on the premises "that might unreasonably increase the danger of fire." Id. at 752. This Court, however, noted that nothing in those provisions prevented the landlord from holding the tenant liable for its negligence, and the landlord never agreed to purchase insurance for the tenant's benefit. Id.

This Court further relied on three additional factors in Loo in determining that the tenant was not an implied co-insured under the lease. Id. Specifically, there was no provision in the parties' lease (1) that exculpated the tenant from liability for her own negligence; (2) required the landlord to maintain insurance for the benefit of the tenant; or (3) shifted to the landlord any loss incurred as a result of the tenant's negligence. Id. Based on our review of "the lease as a whole," this Court allowed the insurer to proceed with its subrogation action against the tenant because the parties did not intend to limit the tenant's liability for her negligent acts. Id. (citations omitted).

We begin our examination of the "lease as a whole" in this case with provisions related to Tenant's liability to Landlord. Paragraph 41 provides that "[r]ent shall not be abated and Tenant shall be fully responsible for all repairs and damages if Premises are partially or totally destroyed by fire or any other casualty caused by Tenant or its agents." Not only does Paragraph 41 not exculpate Tenant

7

for its own negligence, it expressly holds it liable. Further, Paragraph 33 eliminates Landlord's duty to make repairs to the "structural aspects and elements of the Building" if such repairs were "occasioned by any intentional or negligent act of Tenant, its agents, or its employees."

In addition, the lease contains unilateral provisions that expressly waive Landlord's liability and waive Tenant's right to make a claim against Landlord. See Cape Publ'ns, 63 So. 3d at 896 ("Applying [the case-by-case] approach to the commercial lease in this case, we agree . . . that the general provisions requiring [the tenant] to obtain general liability insurance and indemnify and hold [the landlord] harmless for its negligence are relevant to determining which party bears the risk of loss."). Specifically, Paragraph 9 states: "The Landlord shall not be liable for any loss or damage to any of Tenant's personal property or Premises unless directly caused by the gross negligence or willful misconduct of Landlord . . . nor shall Landlord be liable for . . . damages incurred or suffered by the Tenant . . . or others occasioned by . . . fire . . . ." Thus, by its plain language, Paragraph 9 shifts the risk of loss from Landlord, absent gross negligence or willful misconduct on its part, to Tenant. Moreover, Paragraphs 24 and 31 require Tenant to indemnify Landlord:

> 24. INDEMNITY/LIABILITY: Tenant will indemnify and save Landlord and any mortgagee of the Building harmless of and from any and all . . . damages . . . arising from or out of any occurrence in or upon the Premises . . . ."
> . . .

8

> 31. TENANT'S RESPONSIBILITIES: . . . Tenant shall be responsible for, and **shall indemnify and hold harmless Landlord** for any and all costs and expenses relating to such damages, actual or consequential . . . resulting from Tenant's failure to properly maintain the Premises and appurtenances thereto.

(Emphasis added).

The above provisions, when examined to ascertain the intent of the parties as to who should bear the risk for damage caused by Tenant's negligence, support allowing Zurich to proceed with its subrogation claim because Tenant clearly agreed to bear that risk. See Loo, 27 So. 3d at 750; cf. Kennerson, 661 So. 2d at 330 (explaining that the modern trend of authority holds that an "insurer cannot obtain subrogation against the lessee in the absence of an express agreement **or lease provision establishing the lessee's liability**" (emphasis added) (quoting 6A John A. Appleman & Jean Appleman, Insurance Law and Practice, § 4055 at 77–78 (Supp. 1994))).

We also consider the lease provisions related to the obligation to purchase insurance. Rather than require Landlord to maintain insurance for the benefit of Tenant, the lease affirmatively places the burden on Tenant to procure and maintain insurance for its own benefit and to name Landlord as an additional insured:

> 25. INSURED LOSS OR DAMAGE: In any event of loss or damage to the Building, the Premises and/or any contents, each party shall first exhaust its own insurance coverage before making any claim against the other party. **As Tenant is obligated to maintain insurance to fully**

9

**cover all of its losses,** in the event Tenant sustains a loss not fully covered by its own insurance, Tenant acknowledges that it is self-insured for any uncovered loss; Tenant **expressly waives** the right to make any claim against the Landlord or seek recovery of any damages from the Landlord or its insurance company arising out of any loss or incident for which the Tenant should have maintained its own insurance.

. . .

26. TENANT INSURANCE: **Tenant shall procure and maintain in force during the term of this Lease . . . , at its expense, (a) Fire/Windstorm/Property Insurance** with extended coverage endorsement on Tenant's fixtures, equipment, furnishings and other contents of the Premises, for the full replacement cost of said items; and (b) Comprehensive Commercial / Public Liability insurance . . . sufficient to protect against liability for damage claims . . . **arising out of accidents occurring in or around the Premises in a minimum of $1,000,000.00 for each person injured; $1,000,000.00 for any one accident and $1,000,000.00 for property damage;** and (c) Plate Glass Insurance . . . . Such insurance policies **shall provide coverage for Landlord's contingent liability on such claims or losses, and shall name Landlord as an additional insured party**. . . . Tenant shall maintain sufficient insurance to fully protect Tenant from all losses and damages; **Tenant indemnifies and saves Landlord harmless for any claim for which Tenant was insurable.**

(Emphasis added).

Finally, we consider Paragraph 45, which required Tenant to pay, as additional rent, seventy percent of the Landlord's operating expenses, including

10

taxes, insurance premiums, and special assessments.[2]  Tenant argues, based primarily on this provision, that it was an implied co-insured under the terms of the lease because it paid a pro rata share of Landlord's insurance premiums.  Similarly, the dissent seeks to create a bright-line rule—ignoring the other risk-allocating provisions in the lease—that a landlord's insurer cannot sue a tenant in subrogation if the tenant has paid the majority of the landlord's insurance premiums.  But because we follow the case-by-case approach, we must examine the lease as a whole to determine whether the parties intended Tenant to be held liable for damages resulting from its alleged negligence.  See, e.g., Loo, 27 So. 3d at 750.

Here, it is clear that the parties did not intend to shift the risk of loss for damage caused by Tenant's negligence to Zurich, Landlord's insurer.  As we have already explained, the lease explicitly holds Tenant liable for damage caused by its negligence or the negligence of its agents.  There are also provisions holding Landlord harmless for such damage.  In addition, the lease required Tenant to procure and maintain fire insurance for damage "arising out of accidents occurring in or around the Premises[,]" and Tenant agreed to name Landlord as an additional insured.  Although the lease required Tenant to pay a percentage of Landlord's

---

[2] This type of provision is found "[i]n virtually all commercial leases . . . ." 49 Am. Jur. 2d Landlord and Tenant § 358.  The purpose is to assure "that the landlord will actually receive the lease's stated profits, that is, an amount or rent 'net' of the cost of taxes, operating expenses, and the like." Id.

operating costs, including any insurance premiums, nothing in that provision explicitly required Landlord to purchase fire insurance or to name Tenant as an insured under the policy.

According to the dissent, this case is "remarkably similar" to <u>Kennerson</u>, a case in which the First District held that an insurer was not entitled to subrogation from the tenants. However, a careful reading of <u>Kennerson</u> reveals that the lease provisions there are markedly different from the provisions here. Although the tenants in <u>Kennerson</u> paid a pro rata share of the fire insurance, the court did not rely on that fact alone. Instead, the court considered the lease as a whole. For instance, the lease in <u>Kennerson</u> provided that "damage caused by fire 'shall be repaired by and at the expense of [landlord].'" 661 So. 2d at 328. Moreover, the parties agreed that the tenant "would be excused even from paying rent for damaged premises while [the landlord] applied insurance proceeds . . . to effect repairs." <u>Id.</u> Finally, the lease in <u>Kennerson</u> had "no provision making [tenant] liable for damages its negligence might cause." <u>Id.</u> at 329.

Here, in contrast, the parties agreed that Tenant would be "fully responsible" for damage caused by fire, and Landlord had no obligation to make repairs "occasioned by any intentional or negligent act of Tenant, its agents, or its employees." Further, the parties explicitly agreed that Tenant would be liable for damages caused by its negligence, that it would maintain its own fire insurance for

damage claims "arising out of accidents occurring in or around the Premises[,]" and that Landlord would be held harmless for such damage claims. Thus, unlike in Kennerson, the risk-allocating provisions in this case do not evidence the parties' intent to shift the risk of loss from a negligent tenant to the landlord's insurer; instead, the clear intent of the parties was that Tenant or Tenant's insurer would bear the risk of loss due to damage resulting from Tenant's negligence.[3]

Finally, we address the dissent's contention that our case-by-case approach "runs afoul of the economic realities underlying these sorts of provisions in a lease . . . ."[4] This policy argument is similar to one that formed the basis of the Sutton decision. In holding that there should be a presumption against subrogation, the Sutton court explained that its anti-subrogation approach "is derived from a recognition of a relational reality, namely, that both landlord and tenant have an

---

[3] The risk-allocating provisions in this case also distinguish it from Cape Publications. There, the Fifth District found—based on the landlords' express agreement to purchase insurance and tenant's payment of a pro rata share of the premium—that the parties intended that the risk of loss be borne by the landlords' insurer. Cape Publ'ns, 63 So. 3d at 896. However, the court, in its case-by-case approach, never mentions any provisions in the lease explicitly holding the tenant liable for damage resulting from its own negligence.

[4] Under the dissent's approach, almost every commercial lease is transformed into an insurance policy providing coverage for negligent tenants because virtually all commercial leases require the payment of operating expenses. See supra note 2. This is not the law in Florida. Were it, insurance companies would find themselves on the hook for damages caused by negligent tenants whom they have never met much less had the opportunity to assess and assign risk in calculating the amount of the premium being charged to their landlords under the landlords' own policies of insurance.

insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest." 532 P.2d at 482. But we do not follow the <u>Sutton</u> approach, and we agree with other courts that have taken the case-by-case approach that "courts have no business adding insureds to an insurance policy in order to achieve their perception of good public policy." <u>Rausch</u>, 882 A.2d at 815 (citing <u>56 Assocs. ex rel. Paolino v. Frieband</u>, 89 F. Supp. 2d 189, 193 (D.R.I. 2000)); <u>see also</u> <u>Am. Family</u>, 757 N.W.2d at 591 ("The insurer has a right to choose whom it will insure and did not choose to insure the lessees . . . ." (quoting 6A, J.A. Appleman, <u>Insurance Law and Practice</u> § 4055 at 78 (2005))).

## III. CONCLUSION

Based on our review of the lease as a whole, and in light of this Court's decision in <u>Loo</u>, we conclude that Tenant is not an implied co-insured under Zurich's policy, and therefore, Zurich may proceed with its subrogation action against Tenant. Accordingly, because we find the trial court erred in concluding that Tenant was an implied co-insured with Landlord under its policy with Zurich and in dismissing Zurich's subrogation action against Tenant, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

EMAS, C.J., concurs.

14

3D17-0690 <u>Zurich American Insurance Company v Puccini</u>
Logue, J. (dissenting)


The issue in this case is whether a landlord's insurer can bring a subrogation action against a tenant whose alleged negligence caused fire damage to the rented building when, under the lease, the tenant paid the majority of the premiums for the landlord's fire insurance. Until this case, the answer in Florida was no, a tenant who paid the insurer's premiums could not be sued in subrogation by the insurer. Because the majority opinion departs from well-established Florida law and the modern trends across the country, I respectfully dissent.

The crucial provisions of the lease specify that (1) in addition to other rent, the tenant will pay 70% of the landlord's expenses including "premiums for all insurance applicable to the Building," which premiums for the first year of the lease were agreed to be $20,654.45; (2) the tenant will pay any increased premiums for the landlord's building insurance caused by the tenant's use; and (3) "[i]n the event of loss or damage to the Building, the Premises and/or any contents, each party shall first exhaust its own insurance coverage before making any claim against the other party." Taken together, these lease provisions indicate that the "parties plainly agreed to shift the risk of fire damage to an insurance company." <u>Cont'l Ins. Co. v. Kennerson</u>, 661 So. 2d 325, 328 (Fla. 1st DCA 1995).

15

Kennerson is remarkably similar to this case. In Kennerson, a landlord's insurer sued a tenant in subrogation for allegedly causing the fire that damaged the rental property. The lease at issue in Kennerson, like the one at issue here, required the tenant to pay "in addition to the rent elsewhere provided herein, as additional rent hereunder, its pro rata share of all costs of fire and extended coverage insurance for the shopping center." Id. at 326. Because the tenant was paying the premiums for the landlord's fire insurance, the court held that the landlord's insurer could not sue the tenant in subrogation. The First District concluded:

> a landlord's insurer cannot exercise any right of subrogation against a merely negligent tenant to recover money paid the landlord under a fire insurance policy, where the landlord has agreed to bear the expense of repairing fire damage and has assumed responsibility for procuring fire insurance, the cost of which the tenant has agreed to bear and has in fact borne.

Id. at 330.

When examining a commercial transaction, a court must consider the economic realities that informed the bargain between the parties. Under the majority's reading of the lease, the tenant is essentially required to obtain two fire insurance policies to insure the same building from the same risk of loss. The tenant must pay the premiums for a fire policy to protect the landlord from the tenant's negligence, and it must pay the premiums for a second fire policy to protect himself from his own (the tenant's) negligence. This reading makes no economic sense from

16

the perspective of either the landlord or the tenant: it increases the economic rent to the tenant with no corresponding benefit to the landlord.

Because it runs afoul of the economic realities underlying these sorts of provisions in a lease, the majority's reading of the lease runs contrary to the modern trend of authority that bars subrogation against a tenant contractually obligated to pay a landlord's insurance premiums. The majority of courts that have considered this issue have held that such provisions are properly read to indicate the parties' agreement to shift the risk of a fire loss from the parties to the insurance carrier. See id. at 330-31 & n.1 (citing the great weight of authority from numerous jurisdictions supporting the proposition that a landlord's insurer had no right of subrogation against the tenant that either directly or indirectly paid its premiums).

The majority attempts to distinguish Kennerson by focusing on lease provisions other than those relied upon by Kennerson and the majority of jurisdictions. The crucial lease provision in Kennerson, which was the express basis for its holding, is substantively the same as the crucial provision here. It required the tenant to pay the landlord's fire insurance premiums, but did not require the landlord and tenant to be named as co-insureds for the fire insurance. Id. at 328.[5]

---

[5] The addendum to paragraph 15 of the lease deals with fire insurance. Admittedly, paragraph 10 of the lease, which concerned general liability insurance for tort claims by third parties, required the landlord and tenant to be named as co-insureds. The Kennerson opinion expressly points out, however, that paragraph 10 "contrasts with the addendum to paragraph 15" in this regard. Id. The opinion further notes that the

17

The Fifth District reached a result similar to Kennerson in Underwriters of Lloyds of London v. Cape Publications, Inc., 63 So. 3d 892, 896 (Fla. 5th DCA 2011). In Cape Publications, the Fifth District held that

> [t]he lease expressly provides that the [landlord] would purchase a property and casualty insurance policy, which undisputedly covered fire damage on the commercial building. The parties further agreed that [the tenant's] rent included its pro rata share of the premium. These specific provisions . . . plainly indicate that the parties intended the risk of loss be borne by the [landlord's] insurer.

Id.

The majority's attempt to distinguish Cape Publications is also unpersuasive. Whether or not the lease at issue here "expressly" provided that fire insurance be purchased, the lease "expressly" provided the tenant must pay fire insurance premiums, thereby clearly and unequivocally indicating the intent of the parties that the risk of fire loss be borne by the landlord's insurer whose premiums were being paid by the tenant.

State Farm Florida Insurance Co. v. Loo, 27 So. 3d 747 (Fla. 3d DCA 2010), the main case relied upon by the majority, is not controlling because the tenant in that case did not pay the premiums for the fire insurance, as occurred here. In fact,

---

"agreement to carry general liability insurance constitutes additional protection that would apply in circumstances involving liability to injured third parties not at issue here." Id. at 328 n.2 (emphasis added) (citations and quotations omitted).

18

the court in <u>Loo</u> distinguished <u>Kennerson</u> on this basis while still approving the way <u>Kennerson</u> "relied on lease provisions requiring the landlord to bear the expense of repairing any fire damage and to procure fire insurance on the property, the cost of which the tenant has agreed to bear and has in fact borne." <u>Id.</u> at 753 (citations and quotations omitted).

The majority suggests I am taking a legal position whereby "every commercial lease is transformed into an insurance policy providing coverage for negligent tenants." But that is of course the case for any commercial lease where the tenants are paying fire insurance premiums for a policy to protect the building from their own negligence. In the final analysis, I merely submit that we follow the rather unremarkable and well-established law that an insurance company cannot bring an action in subrogation against a tenant for a fire loss covered by fire insurance for which the tenant pays the premiums. <u>See</u> <u>Kennerson</u>, 661 So. 2d at 330; <u>Cape Publ'ns.</u>, 63 So. 3d at 894-96; <u>Loo</u>, 27 So. 3d at 752-53.

For these reasons, I think the trial court was correct. I would uphold the trial court's final order of dismissal.